ACCEPTED
14-14-00992-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
2/6/2015 5:33:21 PM
CHRISTOPHER PRINE
CLERK

# No. 14-14-00992-CV

IN THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
2/6/2015 5:33:21 PM
CHRISTOPHER A. PRINE
Clerk

**KEVIN D. WHEELER, M.D., Appellant**

vs.

**CHARLES F. LUBERGER, Appellee**

---

Appeal of Cause No. 2014-07070,
in the 157th Judicial District Court,
Harris County, Texas, Honorable Randy Wilson

---

## BRIEF OF APPELLANT, KEVIN D. WHEELER, M.D.

---

UZICK & ONCKEN, P.C.
Roger A. Berger
State Bar No.: 02192400
rberger@uzickoncken.com
Jeffrey H. Uzick
State Bar No.: 20419200
jhu@uzickoncken.com
238 Westcott
Houston, Texas 77007
Tel: 713/869-2900
Fax: 713/869-6699

Counsel for Appellant
Kevin D. Wheeler, M.D.

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF THE PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

Appellant

Kevin D. Wheeler, M.D.

Appellant's Counsel

Roger A. Berger
State Bar No.: 02192400
rberger@uzickoncken.com
Jeffrey H. Uzick
State Bar No.: 20419200
jhu@uzickoncken.com
238 Westcott
Houston, Texas 77007
Tel: 713/869-2900
Fax: 713/869-6699

Appellee

Charles F. Luberger

Appellees' Counsel

Mr. John J. Klevenhagen
SBOT: 900001652
john@jmkllp.com
6363 Woodway, Suite 300
Houston, Texas 77057
713-589-5061
FAX: 713-589-5513

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................ii

TABLE OF CONTENTS .......................................................................iii

RECORD REFERENCES AND ABBREVIATIONS ...............................v

INDEX OF AUTHORITIES ...................................................................vi

STATEMENT OF JURISDICTION .......................................................2

STATEMENT REGARDING ORAL ARGUMENT................................2

STATEMENT OF THE CASE.................................................................3

ISSUES PRESENTED.............................................................................4

STATEMENT OF FACTS.......................................................................5

SUMMARY OF ARGUMENT.................................................................7

ARGUMENTS AND AUTHORITIES...............................................8-37

    I.     STANDARD OF REVIEW .............................................8

    II.    CHAPTER 74 EXPERT REPORT REQUIREMENTS.......9

    III.   EXTENSIONS TO CURE SHOULD BE LIBERALLY
        GRANTED FOR DEFICIENT REPORTS ......................11

    IV.   ISSUE NUMBER 1

        **Is an expert report that fails to set forth a standard of care, a
        breach of the standard of care, or proximate cause capable of
        cure with an extension or is it "no report" and thus
        incapable of cure?**...................................................12

A. The difference between "no report" and a deficient, but curable report........................................................................12

B. Appellee's initial report was "no report".................................14

    1. Appellee's report did not set forth a standard of care.................15
    2. Appellee's report did not set forth a breach of the standard of care ................................................16
    3. Appellee's report did not set forth proximate cause.................17
    4. Dr. Iqbal was not qualified to give opinions .........................20
    5. Applying the law to the facts: the Iqbal report was "no report" .....22

V.    ISSUE NUMBER 2:

**The trial court abused its discretion when it failed to dismiss since Appellee failed to cure the deficiencies in his expert report after being given a thirty-day extension to cure** ......................28

A. The attempted curative report was itself deficient....................28

    1. The curative report had no opinions about the standard of care..28
    2. The curative report had no definite opinion that the standard of care was breached.................................................29
    3. The curative report was inadequate and conclusory as to causation................................................30

B. The harshness of the result is not a reason to deny dismissal.........34

C. Appellee's expert reports were inadequate even after the extension to cure and the court abused its discretion by not dismissing Appellee's suit.................................................36

VI.    APPELLANT IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.................................37

CONCLUSION AND PRAYER................................................37

CERTIFICATE OF SERVICE ...............................................39

CERTIFICATE OF COMPLIANCE ..........................................39

APPENDIX:

1.  Order granting thirty-day extension to cure and denying Appellant's Chapter 74 Motion to Dismiss (September 8, 2014)

2.  Order denying Appellant's second Chapter 74 Motion to Dismiss (November 21, 2014)

3.  Report of Atif Iqbal, M.D., June 13, 2014

4.  "Curative" report of Oluwole Fajolu, M.D., October 8, 2014

5.  Tex. Civ. Prac. & Rem. Code §74.351 (in effect on date Petition filed)

## RECORD REFERENCES AND ABBREVIATIONS

Citations to the Clerk's Record are in the form of (1CR [page #]);

Citations to the Supplemental Clerk's Record are in the form of (2CR [page #]);

Citations to the Reporter's Record of August 29, 2014 are in the form (1RR [page #]), and;

Citations to the Reporter's Record of November 21, 2014 are in the form (2RR [page #]).

# INDEX OF AUTHORITIES

## CASES

*American Transitional Care Ctrs., Inc. v. Palacios*, 46 S.W.3d 873 (Tex. 2001)..........*passim*

*Bogar v. Esparza*, 257 S.W.3d 354 (Tex. App. – Austin 2008, no pet.)....................12

*Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48 (Tex. 2002)....................9, 18, 21, 30

*Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996)....................20

*Castillo v. August*, 248 S.W.3d 874 (Tex. App. – El Paso 2008, no pet.)....................21

*Clapp v. Perez*, 394 S.W. 3d 254 (Tex. App. – El Paso 2012, no pet.)....................31-32

*Christus Spohn Health System Corporation v. Castro*, No. 13-13-00302-CV,
2013 WL 6576041 (Tex. App. – Corpus Christi 2013, no pet.)....................25-26

*Collini v. Pustejovsky*, 280 S.W.3d 456 (Tex. App. – Fort Worth 2009, no pet.)..........21

*Cooper v. Arizpe*, 2008 WL 940490 (Tex. App. – San Antonio 2008, pet. denied)......17

*Davis v. Spring Branch Medical Center, Inc.*,
171 S.W. 3d 400 (Tex. App. – Houston [14th Dist.] 2005, no pet.)..............16

*Doades v. Syed*, 94 S.W.3d 664 (Tex App. – San Antonio 2002, no pet.)................18

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985),
*cert. denied*, 476 U.S. 1159 (1986)....................8

*Eichelberger v. St. Paul*, 99 S.W.3d 636 (Tex. App. – Dallas 2003, pet. denied)......18, 31

*Estorque v. Schafer*, 302 S.W.3d 19 (Tex. App. – Fort Worth 2009, no pet.)..............30

*Ezekial v. Shorts*, No. 14-12-00305-CV, 2013 WL 119712
(Tex. App. – Houston [14th Dist.] 2013, no pet.) (mem. op.)....................25

*Fontenot Enterprises v. Kronick*, 2006 WL 2827415
(Tex. App. – Houston [14th Dist.] 2006, no pet.) (mem. op)..............25, 27

*Forrest v. Danielson,* 77 S.W.3d 842 (Tex. App. – Tyler 2002, no pet.)...............15, 29

*Giannone v. Burch,* No. 14-11-00242-CV, 2011 WL 6580728
(Tex. App. – Houston [14th Dist.] 2011, no pet.)(mem op.)...................…......16

*Hillman v. Diagnostic Clinic of Houston,* 2005 WL 995453
(Tex. App. – Houston [1st Dist.] 2005, no pet.)(mem. op.).................18, 31

*Hollingsworth v. Springs,* 353 SW 3d 506 (Tex. App. – Dallas 2011, no pet.)............…...12

*In re Tyler Asphalt & Gravel Co., Inc.,* 107 S.W.3d 832
(Tex. App. – Houston [14th Dist.] 2003) (orig. proceeding)..................................8

*In re Watkins,* 279 S.W.3d 633 (Tex. 2009)........................................13-14

*Kuykendall v. Dragun* 2006 WL 728068 (Tex. App. – Eastland 2006, pet. denied)......17

*Laredo Tex. Hosp. Co. v. Gonzales,*
363 S.W.3d 255 (Tex. App. – San Antonio 2012, no pet.)......................…..23

*Ledesma v. Shashoua,* No. 03-05-00454-CV, Tex. App. LEXIS 3749
(Tex. App. – Austin 2008, pet. den.)........................................................35

*Lewis v. Funderburk,* 253 S.W.3d 204 (Tex. 2008)........................................2

*Lopez v. Sinha,* 2006 WL 2669355
(Tex. App. – Houston [14th Dist.] 2006, no pet.) (mem. op.)................…...33-34

*Niemann v. Refugio County Mem. Hosp.,*
855 S.W.2d 94 (Tex. App. – Corpus Christi 1993, no writ).....................19

*Ogletree v. Matthews,* 262 S.W.3d 316 (Tex. 2007) …....................................12

*Rittmer v. Garza,* 65 S.W.3d 718 (Tex. App. – Houston [14th Dist.] 2001, no pet.)…...31

*Rivenes v. Holden, 252 S.W.3d 332*
(Tex. App. – Houston [14th Dist.] 2008, pet. denied)....................….13, 22

*Rosemond v. Al-Lahiq,*
    362 S.W.3d 830 (Tex. App. -- Houston [14th Dist.] 2012, pet. denied)..........24

*Samlowski v. Wooten,* 332 S.W.3d 404 (Tex. 2011)..........................11-12, 34, 36

*Schmidt v. Escareno,* No. 09-11-00662-CV,
    2012 WL 759063 (Tex. App. – Beaumont 2012, no pet.) (mem. op.)........32-33

*Scoresby v. Santillan,* 346 S.W.3d 546 (Tex. 2011)...........................................13

*Shaw v. BMW Healthcare,* 100 S.W.3d 8 (Tex. App. – Tyler 2002, pet. denied)......11, 15

*Stanton v. Westbrook,*
    598 S.W.2d 331 (Tex. App. -- Houston [14th Dist.] 1980, writ ref'd n.r.e.)......16

*Strom v. Memorial Hermann Hospital System,* 110 S.W.3d 216
    (Tex. App. – Houston [1st Dist.] 2003, pet. denied)..........................9, 15

*Tenet Hosp. LLC v. Love,* 347 S.W.3d 743 (Tex. App. – El Paso 2011, no pet.)..........21

*Villarreal v. Hernandez,* No. 13-10-00532-CV
    (Tex. App. – Corpus Christi, June 9, 2011, no pet.) (mem. op.).............23-24

*Webster v. Johnson,* 737 S.W.2d 884 (Tex. App. – Houston [1st Dist.] 1987, pet. den.)...16

*Whitworth v. Blumenthal,* 59 S.W.3d 393 (Tex. App.–Dallas 2001, pet. dism'd by agr.)..11

*Windsor v. Maxwell,* 121 S.W.3d 42 (Tex. App. – Fort Worth 2003, pet. denied).......19

*Women's Clinic of South Texas v. Alonzo,* 2011 WL 1106698
    (Tex. App. – Corpus Christi 2011, no pet.) (mem. op.)....................34-35

*Zavala v. Pinkerton* 2007 WL 2010832 (Tex. App. –Austin 2007, no pet.)(mem. op)....31

## STATE RULES

Tex. Civ. Prac. & Rem. Code §51.014(a)(9)................................................2, 4

Tex. Civ. Prac. & Rem. Code §74.351................................................9

Tex. Civ. Prac. & Rem. Code §74.351(a)............................................9, 37

Tex. Civ. Prac. & Rem. Code §74.351(b)............................................9-10

Tex. Civ. Prac. & Rem. Code §74.351(c)..............................................11

Tex. Civ. Prac. & Rem. Code §74.351(l)..............................................10

Tex. Civ. Prac. & Rem. Code §74.351(r)(6)............................................9

Tex. Civ. Prac. & Rem. Code §74.403(a)..............................................20

Tex. R. Evid. 702.....................................................................20

Tex. Rev. Civ. Stat. Ann. art. 4590i..............................................8, 22

# No. 14-14-00992-CV

## IN THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

---

### KEVIN D. WHEELER, M.D., Appellant

**vs.**

### CHARLES F. LUBERGER, Appellee

---

Appeal of Cause No. 2014-07070,
in the 157th Judicial District Court,
Harris County, Texas, Honorable Randy Wilson

---

### BRIEF OF APPELLANT, KEVIN D. WHEELER, M.D.

---

TO THE HONORABLE JUSTICES OF THE FOURTEENTH COURT OF APPEALS:

Appellant, Kevin D. Wheeler, M.D., (hereinafter "Appellant"), submits this Appellate Brief and requests this Court reverse the ruling of the trial court that denied Appellant's Chapter 74 Motion to Dismiss, order dismissal of Appellee's lawsuit and award attorneys fees and court costs to Appellant.

## STATEMENT OF JURISDICTION

This is an interlocutory appeal of the denial of a Motion to Dismiss filed pursuant to Chapter 74 of the Civil Practice and Remedies Code. This Court has jurisdiction over Appellants' interlocutory appeal. Tex. Civ. Prac. & Rem. Code §51.014(a)(9); *Lewis v. Funderburk*, 235 S.W.3d 204 (Tex. 2008).

## STATEMENT REGARDING ORAL ARGUMENT

In medical malpractice cases in Texas, claimants must file reports from qualified expert witnesses addressing the standard of care, breach of the standard of care, and proximate cause within 120 days of the filing of a Defendant's original answer. A court has discretion to grant a thirty-day extension to cure a deficiency in an expert's report if the report meets some minimum requirements.

The expert report in this case was so deficient that it qualified as "no report" — the report met none of the statutory requirements and was therefore so deficient it was not capable of cure. Since there is no bright line test as to when a report crosses the line between merely deficient and so deficient as to constitute "no report", oral argument in this case will help clarify the reasons why this expert's report was not capable of cure.

# STATEMENT OF THE CASE

*Nature of the Case.* Appellee sued for medical malpractice, claiming Appellant cut his common bile duct during a laparoscopic cholecystectomy. (1CR 4). Appellee also sued another surgeon called in to assist Appellant after the complication, as well as the group for which he worked. (1CR 4).

*Course of Proceedings.* For ease in the review of the procedural history of this case, Appellant has prepared the following chart which summarizes the relevant events:

| Date | Event | CR citation |
| --- | --- | --- |
| February 14, 2014 | Appellee filed suit. | 1CR 4 |
| June 13, 2014 | Report of Atif Iqbal, M.D., filed. | 1CR 14; Appendix 3 |
| July 14, 2014 | Appellant filed Motion to Dismiss. | 1CR 45 |
| August 29, 2014 | The trial court heard Appellant's Chapter 74 Objections and Motions to Dismiss. | 1RR 1 |
| August 29, 2014 | Appellant filed post-submission briefing. | 2CR 3 |
| September 4, 2014 | Appellee filed post-submission briefing. | 2CR 19[1] |
| September 5, 2014 | Appellant filed additional post-submission briefing. | 2CR 17 |
| September 8, 2014 | The trial court granted Appellee a thirty-day extension to cure deficiencies. | 1CR 56; Appendix 1 |
| October 8, 2014 | Appellee filed a report from a new expert, Oluwole Fajolu, M.D. | 1CR 57, Appendix 4 |
| October 23, 2014 | Appellant filed his Second Motion to Dismiss. | 1CR 59 |
| November 21, 2014 | The trial court heard Appellant's Second Motion to Dismiss and denied the Motion. | 2RR 1, Appendix 2 |

---

[1] Appellant requested inclusion of this brief in the record, but it was not included. (2CR 19). Appellant distinguished Appellee's arguments in a second post-submission brief. (2CR 17).

3

*Trial Court's Disposition of the case.* The Honorable Randy Wilson signed an Order granting an extension to cure a report that Appellant argued was "no report" and not capable of cure, on September 8, 2014. (1CR 56, Appendix 1). After Appellee filed a new report from a new expert, Judge Wilson signed an Order denying Appellant's Second Chapter 74 Motion to Dismiss on November 21, 2014. (1CR 76; Appendix 2). Appellant then timely perfected this interlocutory appeal challenging the denial of the Motions to Dismiss, pursuant to Tex. Civ. Prac. & Rem. Code §51.014(a)(9). (1CR 80).

## ISSUES PRESENTED

**Issue number 1:** Is an expert report that fails to set forth a standard of care, a breach of the standard of care, or proximate cause capable of cure with an extension or is it "no report" and thus incapable of cure? In this case, the trial court abused its discretion when it failed to dismiss Appellee's lawsuit and instead granted a thirty-day extension to cure deficiencies in Appellee's expert report as the report was "no report" and was therefore not capable of cure.

**Issue number 2:** The trial court abused its discretion when it failed to dismiss Appellee's lawsuit after Appellee failed to cure the deficiencies in his expert report after being given a thirty-day extension to cure.

## STATEMENT OF FACTS

Appellee underwent a laparoscopic cholecystectomy on June 14, 2012. (1CR 4). During surgery, Appellant cut Appellee's common bile duct. (1CR 4). Appellant then converted to an open surgery and called in another surgeon, Dr. Clay Albrecht, to assist in the repair. (1CR 4). Appellee alleged various injuries and damages in his suit filed February 16, 2014. (1CR 4).

Appellee filed a three paragraph report of Atif Iqbal, M.D., on June 13, 2014. (1CR 4). Appellant timely filed Objections to Appellee's filing on July 2, 2014 (1CR 29), then filed a Motion to Dismiss on July 14, 2014 after expiration of the 120-day statutory deadline. (1CR 45).

The trial court heard the Chapter 74 Objections and Motions to Dismiss on August 29, 2014. (1RR 1). The court took the matter under advisement and asked for briefing on the issue raised by Appellant, that the report was "no report" and therefore not capable of cure. (1RR 1, 6-7). Post-submission letter briefs were filed on August 29, 2014 (Appellant; 2CR 3), September 4, 2014, (Appellee; 2CR 19), and September 5, 2014 (Appellant; 2CR 17). The trial court eventually granted Appellee's request for a thirty-day extension to cure deficiencies. (1CR 56; Appendix 1).

Appellee subsequently filed a new report from a new expert, Oluwole Fajolu, M.D., on October 8, 2014. (1CR 57). Appellant timely objected to this report and again moved for dismissal on October 23, 2014. (1CR 59).

5

On November 21, 2014, the trial court heard Appellant's Chapter 74 Objections and Second Motions to Dismiss (2RR 1) and denied the Motion to Dismiss on that date. (1CR 76; Appendix 2). Appellant timely perfected this interlocutory appeal challenging the trial court's denial of the Motion to Dismiss. (1CR 80).

# SUMMARY OF THE ARGUMENT

The trial court abused its discretion and erred in failing to grant Appellant's initial Chapter 74 Motion to Dismiss and instead giving Appellee a thirty-day extension to cure deficiencies in his expert report since that report was so deficient it was "no report" and was not capable of being cured. More specifically, Appellee's initial report did not meet any of the statutorily required elements for an expert report as it did not set forth a standard of care for Appellant, did not give opinions on breach of the standard of care by Appellant and did not address any causal connection between any alleged breach and the injuries and damages alleged. The expert also was not qualified.

Despite the extension, Appellee failed to cure deficiencies. Although Appellee did file an additional expert report from a new expert, the new report did not cure the deficiencies. It did not meet the strict requirements of Chapter 74.

The Court erred and abused its discretion when it denied Appellant's Motion to Dismiss. Its ruling should be reversed and the claims against Appellant should be dismissed with prejudice. Appellant should also be awarded attorneys' fees and court costs pursuant to Chapter 74.351(b)(1).

## ARGUMENTS AND AUTHORITIES

Appellant submits the following arguments and authorities.

### I.     Standard of Review.

Chapter 74.001, *et seq.*, of the Civil Practices and Remedies Code ("Chapter 74") governs health care liability claims filed after September 1, 2003, such as this case. It differs in many respects to the prior law, Tex. Rev. Civ. Stat. Ann. art. 4590i ("Art. 4590i"). *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 74.001, *et seq.* and Tex. Rev. Civ. Stat. Ann. art. 4590i (repealed 2003). However, in many instances it uses the exact same language. Therefore, prior case law interpreting Art. 4590i is instructive.

When examining provisions of Chapter 74, courts must be mindful of the comprehensive nature of the Act. *See In re Tyler Asphalt & Gravel Co., Inc.*, 107 S.W.3d 832, 840 (Tex. App. – Houston [14th Dist.] 2003)(orig. proceeding). Tex. Civ. Prac. & Rem. Code Ann. §74.351 replaced Section 13.01 of Article 4590i (repealed by Act of June 2, 2003, 78th Leg., R.S., Ch. 204, §10.09).

A trial court's decision under Ch. 74.351 is reviewed under an abuse of discretion standard. *American Transitional Care Ctrs., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A court abuses its discretion when it acts without regard to guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). To determine if abuse of discretion occurred, this Court must decide if the trial court's failure to grant the Motion to Dismiss was "arbitrary or unreasonable". *Id.* at 243.

8

In reviewing whether an expert report complies with Chapter 74.351, the Court must evaluate whether the report represents a "good-faith effort" to comply with the statute. *Strom v. Memorial Hermann Hospital System*, 110 S.W.3d 216, 221 (Tex. App. – Houston [1st Dist.] 2003, pet. denied), *citing Palacios*, 46 S.W.3d at 878. In making this evaluation, the Court must look only at the information contained within the four corners of the report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002); *Palacios*, 46 S.W.3d at 878.

## II.     Chapter 74 Expert Report Requirements.

Chapter 74.351 of the Civil Practice and Remedies Code governs filing of expert reports in medical malpractice cases and delineates what they must contain. Pursuant to Section 74.351, a health care liability claimant must

> serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

Tex. Civ. Prac. & Rem. Code Ann. §74.351(a). The report must provide

> a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that injury and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. §74.351(r)(6).

Chapter 74.351(b) provides remedies if a claimant fails to timely serve the required report and curriculum vitae, requiring the Court to enter an order that:

(a) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(b) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

Tex. Civ. Prac. & Rem. Code Ann. §74.351(b).

A court must grant a motion challenging the adequacy of an expert report if the report does not represent an objective good faith effort to comply with the definition of an expert report from the statute. Tex. Civ. Prac. & Rem. Code Ann. §74.351(l).

The Supreme Court has held an expert report constitutes a good-faith effort to provide a fair summary of the expert's opinions when the expert discusses the standard of care, breach, and causation with "sufficient specificity to inform the Defendant of the conduct the Plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report that merely states an expert's conclusions about standard of care, breach, and causation does not meet the statutory requirements. *Id.* at 879. Both parts of the *Palacios* test must be met for a report to be adequate—it does not meet the standard if it omits any statutory requirements. *Id.*

An expert report must provide specific details about the patient's treatment, how the Defendant should have treated the patient, and how the alleged failures to treat proximately caused the patient's injuries. *Id.*

A report that fails to adequately set forth the elements required by the statute

is not, by definition, an "expert report." *Whitworth v. Blumenthal*, 59 S.W.3d 393, 397 (Tex. App. – Dallas 2001, pet. dism'd by agr.) (holding that report which failed to set forth a standard of care for the Defendant or how the Defendant breached the standard of care was, by definition, not an expert report); *see also Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 13-14 (Tex. App. – Tyler 2002, pet. denied) (report that did not delineate any standards of care for the Defendant to follow or show what the Defendant should have done differently does not comply with the statute).

### III. Extensions to cure should be liberally granted for *deficient* reports.

The provision governing extensions to cure deficient reports provides that:

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.

Tex. Civ. Prac. & Rem. Code Ann. §74.351(c).

In *Samlowski v. Wooten*, 332 S.W.3d 404 (Tex. 2011), the Supreme Court set forth new procedures for challenging expert reports and provided what some considered to be an announcement of a strong preference that trial courts allow extensions to cure *as long as a report meets some minimum requirements of an expert report.*

The plurality, concurring and dissenting opinions in *Samlowski* discuss the policies behind liberal granting of extensions. The Court noted that guidance must come from the broader purposes of the Texas Medical Liability Act, of which section 74.351(c) is a part. *Id.* at 410. The statute incorporates a significant exception "giv[ing]

11

trial courts discretion to grant a thirty day extension so that parties may, where possible, cure *deficient* reports." *Id.* at 411 (emphasis added).

The overriding principle guiding trial court discretion under section 74.351(c) is elimination of frivolous claims and preservation of meritorious ones. *Id.* at 411. An adequate expert report is how the statute distinguishes between the two. *Id.* A trial court should therefore grant an extension when a deficient expert report can readily be cured and deny the extension when it cannot. *Id.*

Appellee's expert report failed to meet any of the required elements and therefore was not just inadequate, but rather "no report" and not capable of cure.

### IV. Issue number 1.

**Issue number 1: Is an expert report that fails to set forth a standard of care, a breach of the standard of care, or proximate cause capable of cure with an extension or is it "no report" and thus incapable of cure?**

Because Appellee's report did not set forth any of the required elements as to Appellant, it was "no report" and was not capable of being cured with an extension.

### A. The difference between "no report" and a deficient, but curable report.

The Supreme Court has recognized there are differences between absent reports and merely deficient reports. *See Ogletree v. Matthews*, 262 S.W.3d 316, 320 (Tex. 2007). A report that wholly fails to address one or more elements as to a Defendant is an absent, not deficient report. *See Bogar v. Esparza*, 257 S.W.3d 354, 369 (Tex. App. – Austin 2008, no pet.); *Hollingsworth v. Springs*, 353 SW 3d 506, 524 (Tex. App. – Dallas

12

2011, no pet.) (court may not provide opportunity to cure when an expert report is "absent" as opposed to deficient).

A report that fails to implicate a Defendant is so legally defective it is "no report" and cannot be cured. *Rivenes v. Holden*, 252 S.W.3d 332 (Tex. App. – Houston [14th Dist.] 2008, pet. denied). An expert report must actually allege that the Defendant committed malpractice. *Scoresby v. Santillan*, 346 S.W.3d 546, 559 (Tex. 2011).

In *Scoresby*, the Supreme Court established a three-prong test to determine if a report is "no report" or merely deficient, but curable; thus, for an extension to be considered, the report must at a minimum (1) be timely served, (2) contain the opinion of a qualified expert, and (3) *implicate the Defendant's conduct. Id.* at 557 (emphasis added). Justice Willett noted in his concurrence that the line between "no report" and an inadequate report is "forgiving but bright: the 'report' must actually allege someone committed malpractice. The genesis of this elemental requirement is found in *Ogletree*, where the Court first indicated that the purported report must implicate a provider's conduct. It merits emphasis, however, that today's standard, benevolent as it is, is not satisfied by any medical-related piece of paper; the bar is low but not subterranean." *Id.* at 558-60 (Willett, J., concurring).

In *In re Watkins*, 279 S.W.3d 633 (Tex. 2009), Justice Willett again wrote a concurring opinion, noting the Defendant appealed the extension allowed by the trial court, but failed to appeal denial of the motion to dismiss, thus depriving the Court of

the opportunity to further clarify what constitutes "no report". *Id.* at 636-637 and fn. 13. In the case at bar, Appellant brings error as to denial of the Motion to Dismiss to allow the appellate courts to declare Dr. Iqbal's report to be "no report", thus helping to further clarify the line between a report that is curable and one that is so utterly deficient that it is "no report" and thus not capable of cure. This will also provide guidance to future litigants and to courts considering future Chapter 74 challenges.

## B. Appellee's initial report was "no report".

Dr. Iqbal's report does not implicate Appellant's conduct as it does not provide a specific standard of care for Appellant, does not say Appellant breached any standard of care and does not affirmatively connect any such breach to the cause of any injury.

Dr. Iqbal's report consists of three short paragraphs, with the first two devoted to what records he reviewed and a very brief background of the surgery performed. (1CR 16). The third and final paragraph, in its entirety, states:

> *"Comprehensive review of all documents especially operative report indicate a complex iatrogenic bile duct injury. In my opinion that require [sic] hepato biliary surgeon as the reconstruction procedure is complicated and if not done right it leads to prolong [sic] morbidity and some case mortality. I feel that Intra operative [sic] consult should have been called by Dr. Wheeler instead of trying to fix the injury by himself unless he does routinely [sic] hepato biliary procedures. Operative report has some elements of confusion suggesting doubts about the integrity of final repair. This might be the reason of prolong recovery of Mr. Luberger."*

(1CR 16; Appendix 3).

14

### 1. Appellee's report did not set forth a standard of care.

As to the first required element, standard of care, Dr. Iqbal does not state what the standard of care required Appellant to do. A report that fails to set forth a standard of care is not a proper report under the statute. *See Forrest v. Danielson*, 77 S.W.3d 842, 848 (Tex. App. – Tyler 2002, no pet.). In *Forrest*, the Court noted

> The amended expert report filed in this case lacks all of the requirements of section 13.01(r)(6)[2]. The report contains a review of the medical records, which is not required by section 13.01(r)(6). Moreover, not only does it not present a fair summary of the three required elements, *it does not even recite an applicable standard of care, explain how the medical care failed to meet that standard, or identify the causal relationship between that failure and the claimed injury.* Rather, the report states that "this surgery was unnecessary and improper" and concluded that "[m]ore likely than not, this procedure caused Ms. Forrest to have symptoms and findings not present prior to surgery." Such conclusions are inadequate to meet the requisites of section 13.01(r)(6).

*Id.* (emphasis added). The Iqbal report is no different—it wholly fails to recite an applicable standard of care.

Identifying the standard of care is critical because "whether a defendant breached his duty to a patient cannot be determined without specific information about what the defendant should have done differently." *Strom*, 110 S.W.3d at 222; *Shaw*, 100 S.W.3d at 13.

Even saying a Defendant violated the standard of care would not be enough unless the expert discusses what the standard of care required because an alleged breach cannot be evaluated without knowing what the standard of care required. *See*

---

[2] This was the equivalent section of the predecessor statute, Article 4590i, governing expert reports.

*Giannone v. Burch,* No. 14-11-00242-CV, 2011 WL 6580728 (Tex. App. — Houston [14th Dist.] 2011, no pet.)(mem op.). Additionally, a court cannot infer a standard of care when it is not set forth in a report. *Davis v. Spring Branch Medical Center, Inc.,* 171 S.W. 3d 400, 409 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

Dr. Iqbal did not set forth a standard of care at all; the report was not capable of cure as to the standard of care.

### 2. Appellee's report did not set forth a breach of the standard of care.

Dr. Iqbal's report does not state that Appellant violated the standard of care. Although he does discuss an opinion regarding obtaining an intra-operative consult, he merely says he "feels" it should have been done. Specifically, the only potential place a breach is discussed is when he says:

> *"I feel that Intra operative* [sic] *consult should have been called by Dr. Wheeler instead of trying to fix the injury by himself unless he does routinely* [sic] *hepato biliary procedures."*

(1CR 16; Appendix 3).

Dr. Iqbal thus gives his personal preference, but does not equate his personal preference to the standard of care. A physician's personal preference does not establish the standard of care absent testimony that deviation from the expert's personal preference is below the standard of care. *See Webster v. Johnson,* 737 S.W.2d 884, 889-890 (Tex. App. – Houston [1st Dist.] 1987, pet. denied); *Stanton v. Westbrook,* 598 S.W.2d 331, 333 (Tex. App. – Houston [14th Dist.] 1980, writ ref'd n.r.e.). Dr.

16

Iqbal does not tie his personal preference to the standard of care and he therefore does not address breach of the standard of care.

Dr. Iqbal does not actually opine that the standard of care required Appellant to obtain an intra-operative consult. This part of the report, and hence the opinion about breach of the standard of care (assuming that was even Dr. Iqbal's intent), assumes without any basis that Dr. Wheeler does not routinely do hepato-biliary procedures and does not discuss what, if any, evidence supports that assumption.

An expert may not rely on assumptions and speculation in an expert report. *Cooper v. Arizpe*, 2008 WL 940490 *4 (Tex. App. – San Antonio 2008, pet. denied) ("by relying on assumptions instead of facts, the report provides no basis for the trial court to conclude that the claims against Cooper and Wilcox have merit" and the trial court therefore abused its discretion by denying the Motion to Dismiss). *See also Kuykendall v. Dragun* 2006 WL 728068 at *3-4 (Tex. App. – Eastland 2006, pet. denied). The *Kuykendall* court also affirmed the denial of an extension to cure deficiencies (albeit in analyzing Article 4590i). *Id.* at *5.

Dr. Iqbal did not set forth any breach of the standard of care; the report was not capable of cure as to breach of the standard of care.

### 3. Appellee's report did not set forth proximate cause.

Although "magic words" may not be required, the expert must address proximate cause and provide some basis to conclude that an act or omission of a Defendant proximately caused injuries. *Palacios*, 46 S.W.3d at 875.

"A report that merely states the expert's conclusions about the standard of care, breach, and causation is not sufficient." *Id.* at 879. An expert report cannot merely state conclusions to meet the elements of the *Palacios* test; it must explain the basis of the expert's statements and link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52; *Hillman v. Diagnostic Clinic of Houston*, 2005 WL 995453 at *3 (Tex. App. – Houston [1ˢᵗ Dist.] 2005, no pet.).

Stated differently, the expert must explain the basis of his statements and link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52-53. *See also Eichelberger v. St. Paul*, 99 S.W.3d 636, 639 (Tex. App. – Dallas 2003, pet. denied) (statement in report that plaintiff should have received different treatment and was injured as a result is conclusory and dismissal appropriate).

A conclusory statement on causation does not satisfy the statute if the causal link is not explained. *Doades v. Syed*, 94 S.W.3d 664, 672 (Tex. App. – San Antonio 2002, no pet.). As in the case at bar, *Doades* involved a laparoscopic cholecystectomy and allegations that resulting complications were not properly treated. *Id.* at 667. Although the focus was more towards the recognition and treatment of the complications, the reports in *Doades* were still more detailed than the reports in the case at bar and were still ruled inadequate. *Id.* at 671-672.

The closest Dr. Iqbal came to addressing causation is a statement that could be construed as one of *possible* causation, not the required *probable* causation (again, assuming that was even Dr. Iqbal's intent):

18

*"Operative report has some elements of confusion suggesting doubts about the integrity of final repair. This might be the reason of prolong [sic] recovery of Mr. Luberger."*

(1CR 16; Appendix 3). This does not satisfy the requirement for showing *probable* cause of injuries and damages. *Niemann v. Refugio County Mem. Hosp.*, 855 S.W.2d 94, 96 (Tex. App. – Corpus Christi 1993, no writ) (must show probable, not possible cause).

To the extent Dr. Iqbal even opined about the cause of injuries, the report simply opined on the existence of a prolonged recovery, without directly saying that any negligence of Appellant caused prolonged recovery or how; this is inadequate.

In *Windsor v. Maxwell*, 121 S.W.3d 42, 45 (Tex. App. – Fort Worth 2003, pet. denied) the patient suffered a cerebral infarction when the catheter inserted into her cerebral artery during an angiogram severed the artery and penetrated her brain. The expert report addressed standard of care and breach, but the only opinions about the injuries were that they occurred after withdrawal of consent by the patient and the failure to immediately withdraw the catheter. *Id.* at 49-50. The Court of Appeals held this was not enough—the expert was required to explain how failure to discontinue the procedure or failure to withdraw the catheter caused the injury. *Id.* A mere statement that the injury followed the negligence is not enough. *Id.* at 49. That is exactly what Dr. Iqbal did, mentioning doubts about the integrity of the repair and prolonged recovery followed the inadvertent cutting of the common bile duct without connecting any specific act or omission of Appellant to those injuries/damages.

19

Dr. Iqbal did not set forth proximate cause; the report was not capable of cure as to proximate cause.

**4. Dr. Iqbal was not qualified to give opinions.**

One basis of Appellants' Chapter 74 Objections was the lack of qualifications of Dr. Iqbal based on his statement that a consult by a hepato-biliary specialist would have in some way altered the outcome. (1CR 34). Dr. Iqbal is not a hepato-biliary specialist, has no qualifications that would allow him to testify what a hepato-biliary specialist would have done if consulted intra-operatively, and has no qualifications to opine on whether such a consult would, in reasonable probability, have changed the outcome. Any opinions on causation are therefore sheer speculation on his part.

Chapter 74.403(a) governs qualifications of a witness to opine on proximate cause and states that

> …a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code §74.403(a).

The party offering the expert's testimony bears the burden of proof that the witness is qualified under Tex. R. Evid. 702. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996) (Emergency Room physician not qualified to opine on allege brain injuries despite testimony he had training and experience in diagnosing brain injuries).

A report authored by a person who is not qualified to testify cannot constitute

20

an adequate report. *Castillo v. August*, 248 S.W.3d 874, 879 (Tex. App. – El Paso 2008, no pet.).

To comply with Chapter 74, the expert report must establish, on its face, that the purported expert is qualified. *Id.* at 880-881; *see also Collini v. Pustejovsky*, 280 S.W.3d 456, 465 (Tex. App. – Fort Worth 2009, no pet.) ("while Dr. Haberer's curriculum vitae does establish a background in pharmaceutical matters, his report does not indicate he has any specific knowledge, experience, education, or training in assessing the causal relationship between the prolonged use of Reglan and tardive dyskinesia"). The proffered medical expert's expertise must be evident from the four corners of his report and curriculum vitae. *Tenet Hosp. LLC v. Love*, 347 S.W.3d 743, 750 (Tex. App. – El Paso 2011, no pet.).

Although it is possible that Appellee's expert may be qualified to opine on what a hepato-biliary specialist might have done if consulted (though any such opinions would be sheer inadmissible speculation), there is nothing in the four corners of his report upon which the Court could reach the conclusion that he is qualified to give any such opinions. In fact, his statement that he thinks a different type of specialist may have been appropriate to contact actually demonstrates his lack of qualifications.

The Court cannot make inferences about the expert's qualifications. *See Bowie*, 79 S.W.3d at 53. Appellee's expert witness failed to demonstrate any qualifications to opine on the cause of the injuries made the basis of this lawsuit.

Dr. Iqbal did not set forth qualifications to give opinions; this is another reason that the report was not capable of cure.

**5. Applying the law to the facts: the Iqbal report was "no report".**

As demonstrated above, Dr. Iqbal's report was "no report" as to the standard of care, breach of the standard of care, and proximate cause; in addition, he was not shown to be a qualified expert witness and, indeed, indicated he was not qualified in his report. Since Appellee met none of the four requirements (the three elements plus a showing his expert was qualified), his report was not merely deficient, it was "no report". *Rivenes*, 257 S.W.3d at 338-339. This Court should rule the same as in *Rivenes*: the Iqbal report "cannot be considered merely deficient as to Petitioner; it is, in fact, no report at all." *Id.* The trial court had no discretion to do anything other than dismiss Appellee's lawsuit; its failure to do so was an abuse of discretion.

The Iqbal report does not implicate Appellant's conduct--the report was not just inadequate, it was no report; granting an extension was an abuse of discretion. Under the plain language of Chapter 74.351(c) and Supreme Court precedent, the trial court erred in failing to dismiss and instead granting an extension.

Allowing the extension to cure in this case is the equivalent of judicially bringing back the 30-day grace periods found in Article 4590i[3] §13.01(f) and (g), extensions not included in Chapter 74 by the Texas legislature after tort reform.

At the hearing on Appellant's initial Motion to Dismiss, Appellant contended

---

[3] Tex. Rev. Civ. Stat. Ann. art. 4590i (repealed 2003).

22

the report of Dr. Iqbal is "no report" and thus not capable of being cured. (1 RR 3-4).

More recent cases in the courts of appeals are also on point and support Appellant's position. In *Laredo Tex. Hosp. Co. v. Gonzales*, 363 S.W.3d 255 (Tex. App. – San Antonio 2012, no pet.), the expert's report did not address a Defendant by name, but did provide opinions on negligence and causation:

> "based upon my training and experience, it is my medical judgment that the initial attempt at insertion of the intravenous catheter was more likely than not the cause of the development of the painful neuroma involving the superficial branch of the left radial nerve...."

*Id.* at 259. The Court found it was "no report" and not capable of cure and reversed the trial court and remanded for entry of a judgment of dismissal and a determination of reasonable attorney's fees and costs. *Id.* at 259.

Although Dr. Iqbal does mention Appellant by name, he does not address any of the required elements and his report was not capable of cure.

The Corpus Christi Court of Appeals denied an appeal[4] in *Villarreal v. Hernandez*, No. 13-10-00532-CV (Tex. App. – Corpus Christi, June 9, 2011, no pet.) (mem. op.). In analyzing the expert's reports, the Court noted that although insufficient to satisfy Chapter 74, his letter at least stated (1) the Defendant performed a root canal "on the wrong tooth" and (2) the "wrong tooth" the Defendant operated on "would not have any problems were it not for the root canal treatment that was mistakenly done on it." The Court noted that "although these statements are not explicitly labeled as

---

[4] The Court actually dismissed for Want of Jurisdiction on finding that denying the Motion to Dismiss and granting the requested extension was not an abuse of discretion.

23

descriptions of the standard of care, breach, and causation elements, they do clearly suggest that Dr. Villarreal breached the applicable standard of care by performing a root canal on the wrong tooth and that the tooth would not have had "any problems" but for the erroneous procedure." Unlike in *Villarreal*, the Iqbal report does not show a breach of the standard of care or causation.

This Court reversed a trial court's order and remanded so an extension could be considered in *Rosemond v. Al-Lahiq*, 362 S.W.3d 830 (Tex. App. – Houston [14th Dist.] 2012, pet. denied). The expert's report in *Rosemond* was more than "no report", it was a deficient report because the expert said, *inter alia*:

> "Despite having no upper neuron dysfunction Ulysses Rosemond developed severe multiple joint contractures. There is no documentation in the records that have been provided to me that range of motion exercises were provided during this prolonged illness and hospitalization where Ulysses Rosemond was very weak and unable to move very much on his own. The standard of care when a person is that ill is to be provided range of motion exercises. Therefore based on the records that I have and no documentation that range of motion exercises were provided, the lack of range of motion exercises to a reasonable degree of medical certainty is the proximal [sic] causative problem that resulted in Mr. Ulysses Rosemond having severe contractures to this date. No range of motion exercises is a breach of standard of care (citations omitted). The standard of care is to provide range of motion exercises a minimum of one time per day in this debilitated of a patient (citations omitted). The breach in the standard of care, to a reasonable degree of medical certainty, resulted in joint contractures, impairment, and disability."

*Id.* at 838. The report in *Rosemond* was much more detailed that the report of Dr. Iqbal and, unlike Dr. Iqbal's three paragraph letter, it provided opinions on all three statutorily-required elements.

24

The inadequate versus "no report" dichotomy was also recently addressed by this court in *Ezekial v. Shorts*, No. 14-12-00305-CV, 2013 WL 119712 (Tex. App. – Houston [14th Dist.] 2013, no pet.) (mem. op.). The issue in *Ezekial* was whether the three-page expert report was inadequate as to the Defendant labor and delivery physician even though that physician was not named, or if it was "no report". This Court noted that the expert's report contained several opinions about breach of the standard of care by the labor and delivery physician and that there was no doubt that Dr. Ezekial was the one and only labor and delivery physician to whom the report could have referred to. *Id.* at *4.

Thus, the *Ezekial* report differs from the Iqbal report since it sets forth the required elements of an expert report and was sufficient to inform Dr. Ezekial and the Court of the specific conduct called into question. Although Dr. Wheeler was named in the Iqbal report, the report itself addressed none of the required elements and was not capable of cure. *See Fontenot Enterprises v. Kronick*, 2006 WL 2827415 at *5 (Tex. App. – Houston [14th Dist.] 2006, no pet.) (mem. op.)(reversing trial court because expert report failed to include required statutory elements).

The experts in *Christus Spohn Health System Corp. v. Castro*, No. 13-13-00302-CV, 2013 WL 6576041 (Tex. App. – Corpus Christi 2013, no pet.), went into "great detail about the procedures necessary to prevent pressure ulcers in standard conditions" and referred to "specific medical record dates and page numbers throughout her report and specifically identifies what she characterizes as the deficiencies in those records." *Id.* at

25

*6. These lengthy and detailed reports in *Castro* addressed two of the three required elements (standard of care and breach) and addressed albeit inadequately the other element (causation), whereas Dr. Iqbal's three-paragraph report addresses none of the three required elements, thus justifying an extension to cure.

In summary, the report of Dr. Iqbal provides none of the elements required of a Chapter 74 report: it does not address the standard of care or breach and fails to address any proximate causal connection, merely mentioning a possible prolonged recovery. It qualifies as "no report" and was not capable of cure; therefore, the trial court abused its discretion in not dismissing Appellee's lawsuit.

At the hearing on the initial Motion to Dismiss, Appellant's counsel argued to the trial court that the report qualified as "no report" since it does not provide a standard of care or breach. (1RR 4, lines 6-9). The trial court initially agreed:

> THE COURT: *"You know, I've got to tell you, Mr. Klevenhagen, that's my problem. There are cases that say if a report is so lame, it constitutes, quote, "no report," close quote, such that you don't get the 14 [sic] days."*

(1RR 4, lines 10-14). The analysis should have ended there.

The trial court continued:

> *"So I've got no standard of care. I've got no breach of the standard. And I've got a causation that says it might be the reason. I mean, I'm not sure you hit any of the three bases."*

(1RR 4, lines 3-7). Once again, after acknowledging that the report did not address either standard of care or breach and only addressed "possible" causation, so that none

26

of the three bases" were hit, the analysis should have ended and dismissal ordered. Failing to dismiss and instead granting an extension was an abuse of discretion.

Although Appellee's counsel argued that the report did address the standard of care, the trial court correctly said it did not:

> MR. KLEVENHAGEN: *"…. I think he does set forth that Dr. Wheeler should have called in a more experienced surgeon to do the repair, which would be the standard of care, and he failed to …."*
>
> THE COURT: *"Well, he says he should have done it if he doesn't do it routinely himself. So it doesn't even say that."*

(1RR 5, lines 13-19). Once again, the trial court acknowledged the report did not address the standard of care and failing to dismiss was an abuse of discretion.

At the conclusion of the hearing, Judge Wilson acknowledged on the record that he had never denied a thirty-day extension and that this might be the first time he was presented with a "no report" report[5]. (1RR 5, line 24 to 1RR 6, line 2). The Court asked for briefing on the issue (1RR 6-7); both counsel filed letter briefs (2CR 3, 17, 19). This briefing further established that the Court was without discretion to do anything other than dismiss Appellee's lawsuit.

If the Court of Appeals agrees that the Iqbal report was "no report" and that the trial court abused its discretion in failing to dismiss, this Court must reverse and render judgment in Appellant's favor. Appellant briefs a second issue regarding the

---

[5] *Fontenot Enterprises v. Kronick,* 2006 WL 2827415, was an interlocutory appeal of Judge Wilson's denial of a Chapter 74 Motion to Dismiss in which this Court found an abuse of discretion and reversed and rendered judgment in Fontenot Enterprises' favor.

adequacy of the "curative" report in the event that this Court concludes that the Iqbal report was merely inadequate and because Appellee has already received his one allowed thirty-day extension.

## V.    Issue number 2

**Issue number 2:   The trial court abused its discretion when it failed to dismiss since Appellee failed to cure the deficiencies in his expert report after being given a thirty-day extension to cure.**

After improperly granting Appellee a thirty-day extension to cure deficiencies in the initial expert report, Appellee filed a new report from a new expert, Oluwole Fajolu, M.D. (1CR57, Appendix 4).  Appellant timely filed objections to the attempted curative report because it failed to cure the deficiencies. (1CR 59).

### A. The attempted curative report was itself deficient.

Appellant addresses the deficiencies in the Fajolu report below.

### 1.    The curative report had no opinions about the standard of care.

As with the insufficient report of Dr. Iqbal, Dr. Fajolu does not set forth a specific standard of care that applies to Appellant.  His report merely gives two general statements, one the inverse of the other:

> *Appellant was required to "carefully identify the biliary tract anatomy, specifically the cystic duct, and only cut the cystic duct" and*

> *The standard of care required Dr. Wheeler to "carefully identify the common bile duct and not cut it."*

(1CR 66, Appendix 4).

Dr. Fajolu does not state how Appellant was supposed to "carefully identify" the anatomy or what steps a reasonably prudent surgeon should take to avoid cutting the common bile duct (e.g., how the gallbladder, vessels, ducts and anatomy can and should be viewed through the laparoscope; how to take into account potentially abhorrent anatomy; different approaches and steps that can be used while dissecting layer by layer from the skin down through tissue, muscle, and into the area of the gall-bladder and ductal system; tests that can be done during the procedure, such as cholangiography, that help identify the critical structures, and; sequential steps that should be taken to minimize the chances of a bad result). Including some of this information would have at least put Appellant on notice as to what steps Appellee's expert believes the standard of care required.

## 2. The curative report had no definite opinion that the standard of care was breached.

Dr. Fajolu does not state anywhere in his report that Appellant breached the standard of care, nor how he did so. As such, Appellee failed to meet the strict requirements of Section 74.351. *See Forrest,* 77 S.W.3d at 848.

At most, the attempted curative report merely established that Appellant cut the common bile duct; the report does not provide any details about how the mere cutting of the common bile duct was below the standard of care or could have been avoided by Appellant using reasonable care. As acknowledged by Appellee's counsel, cutting the common bile duct can occur without negligence (2RR 6); thus, it was imperative

that Appellee's expert explain how the transection of the common bile duct was negligent. Otherwise, the expert's opinion is the equivalent of saying that a bad result is negligence and/or that there is negligence per se when a bad result occurs, neither of which are proper theories of recovery in Texas.

**3. The curative report was inadequate and conclusory as to causation.**

The report of Dr. Fajolu did not properly address proximate cause. Dr. Fajolu merely opines that if Appellant had avoided cutting the common bile duct, conversion to an open procedure, additional pain and subsequent surgeries would not have occurred. What Dr. Fajolu, like Dr. Iqbal before him, fails to do is to actually connect some specific act or omission of Appellant to these alleged injuries and damages.

A report is insufficient if it does not link a Defendant's alleged negligence to the alleged damages. *Palacios*, 46 S.W.3d at 879; *Bowie*, 79 S.W.3d at 52); *Estorque v. Schafer*, 302 S.W.3d 19, 28-29 (Tex. App. – Fort Worth 2009, no pet.)(trial court abused discretion when it concluded a report was adequate since it did not link the Defendant's failure to act to the alleged injuries and did not attempt to explain how Defendant's inactions caused those injuries).

In deciding whether the requirements are met, a trial court should look no further than the four corners of the report. *Palacios*, 46 S.W.3d at 878. One cannot infer causation--it must be in the report and the conclusion (i.e., a better outcome) must be linked to the alleged breach (i.e., misreading x-rays). *Bowie*, 79 S.W.3d at 53.

30

Appellee's expert was required to explain how an alleged violation of the standard of care caused any injuries or damages. *Zavala v. Pinkerton*, 2007 WL 2010832 at \*4 (Tex. App. – Austin 2007, no pet.) (mem. op). The *Zavala* Court noted the "entirety of the discussion on causation…is confined to a single sentence stating that … [the Defendants'] departures from the standard of care were 'contributing causes' of the" injuries and was entirely devoid of any explanation of how the alleged breaches caused the injuries. *Id.; see also Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex. App. – Houston [14th Dist.] 2001, no pet.) (report that does not explain causal relationship is insufficient to meet the statutory requirements); *Hillman*, 2005 WL 995453 at \*3 (expert did not indicate the basis for her conclusions, such as referral to specific entries in the records to support her conclusions); *Eichelberger*, 99 S.W.3d at 639 (statement in report that plaintiff should have received different treatment and was injured as a result is conclusory and dismissal was appropriate). The reports mentioned in the above cases were much more detailed than Appellee's reports—those experts at least opined that the Defendants violated specific standards of care and proximately caused injuries.

Appellees' experts' reports are not unlike the one declared inadequate in *Clapp v. Perez*, 394 S.W.3d 254 (Tex. App. – El Paso 2012, no pet.). In *Clapp*, the expert opined that if a "nasal-gastric" tube had been placed before surgery, the stomach contents would have been emptied and this would have prevented aspiration that led to pneumonia, which in turn led to ARDS, multi-organ failure and death. *Id.* at 261. The Court concluded that, though broad and sweeping in scope, in essence the expert was

simply concluding that one event caused the other without explaining how the Defendants' alleged negligence caused those events. *Id.* at 261-262.

Appellee's experts likewise simply conclude (to the extent that they even make conclusions) that there were injuries without any explanation of how any alleged negligence caused those damages. The Fajolu report does not directly say that any specific act or omission of Appellant proximately caused injuries or damages. The Fajolu report merely states that cutting the common bile duct led to subsequent pain and procedures—it does not give any opinion that, in reasonable medical probability, some specific act or omission did, in fact, proximately cause injury or damage.

Other laparoscopic cholecystectomy cases are illuminating. Compare the report in the case at bar to the one in *Schmidt v. Escareno,* No. 09-11-00662-CV, 2012 WL 759063 (Tex. App. – Beaumont, 2012, no pet.) (mem. op.), also involving a transected common bile duct. In *Schmidt,* the Plaintiff's expert opined the standard of care required use of a technique surgeons use to obtain what he referred to as the "critical view" allowing the surgeon to visualize the structures to be clipped and cut as part of the laparoscopic cholecystectomy and to be able to identify abnormal anatomy, and that Dr. Schmidt did not "utilize cholangiography to conclusively identify the cystic duct before dividing any structures." *Id.* at *3. The expert stated that:

- The Defendant "apparently just relied on the appearance of the 'cystic duct,'—gallbladder junction, which is quite dangerous, as this may be deceiving, particularly in the presence of severe inflammation such as that described by Dr. Schmidt."

32

- Obtaining a "critical view" of the structures attached to the gallbladder, "alone or with cholangiography[,] will usually enable the surgeon to conclusively identify these structures, and if it does not, the surgeon can then convert to the open procedure so that conclusive identification can be made prior to dividing the ducts, thus avoiding injuries such as Mr. Escareno's which are the result of misidentification of the anatomy."
- "[m]ore likely than not, had Dr. Schmidt employed any or all of these techniques, he would have avoided misidentifying the common bile duct as the cystic duct and thus avoided transecting the common bile duct."

*Id.*

According to Dr. Leitman's report in *Schmidt*, even if Escareno's anatomy was not normal, "use of the above-referenced techniques would have allowed for a better view of the anatomy . . . so that [Dr. Schmidt] could definitively identify the structures before proceeding." *Id.* at \*8. Dr. Leitman's report concluded that had the standards he described been followed, "the injuries described herein would not have occurred." *Id.*

These are the kinds of details missing from either of Appellee's expert reports[6], details that, if present, could have given the trial court discretion to deny Appellant's Motion to Dismiss.

This Court has also previously analyzed at least one other Chapter 74 appeal of an expert report in a laparoscopic cholecystectomy case. In *Lopez v. Sinha*, 2006 WL 2669355 (Tex. App. – Houston [14th Dist.] 2006, no pet.) (mem. op.), this Court found

---

[6] Note also that Dr. Leitman's report in *Schmidt* consisted of seven single-spaced pages that identified five standards of care applying to the Defendant and six ways these standards of care were breached, with over a full page of opinions addressing proximate cause. In the case at bar, by contrast, Dr. Iqbal's report was less than one page and did not identify any specific standard of care or breach and did not address any causal connection between any unspecified breach and any injuries.

the report deficient because although it discussed the result of what happened after the alleged negligence, it did not include specific information about what the Defendant should have done to achieve the desired result, how he failed to follow any specific procedure and what the Defendant should have done to achieve that result. *Id.* at *4.

Appellee's expert reports suffer from the same fatal omissions as the report in *Sinha* and it was an abuse of discretion to not dismiss this lawsuit.

Appellee's experts reports leave Appellant in the very position the expert report requirement of Chapter 74 was created to avoid: Appellant is forced to defend a case in which Appellee alleges that negligence caused injuries, without any specifics connecting Appellant's alleged negligence to the injuries made the basis of the suit.

## B. The harshness of the result is not a reason to deny dismissal.

Although the consequences might be seemingly harsh, the Supreme Court in *Samlowski* noted that

> "Wooten was not ambushed; she knew exactly what Dr. Samlowski's objection was and had adequate opportunity to show the trial court that the alleged defect in Dr. Patman's report was curable—if it was. She failed to either file a supplemental report attempting to address Dr. Samlowski's objection or present other such evidence at the hearing."

*Samlowski,* 332 S.W.3d at 424 (J. Johnson, dissenting).

In *Women's Clinic of South Texas,* the Court noted that the Plaintiff was on notice of the potential deficiencies in her report and acted at her own risk in failing to remedy those alleged deficiencies by serving an amended report within the thirty-day extension period granted by the trial court. According to the Court,

"a health care liability plaintiff is allowed one thirty-day extension to cure deficiencies in her otherwise timely-served expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Alonzo requested her extension at the October 28, 2009 hearing, the trial court granted it in its November 5, 2009 order, and Alonzo took full advantage of it to produce Dr. Thompson's CV outside the 120-day deadline for serving her expert report. Further, in its objections and motion to dismiss, the Clinic specified the other 7 alleged deficiencies in the report, namely that the expert report failed to set out the required standard of care, breach, and causation elements and that Dr. Thompson's qualifications to author an expert report as to the Clinic were not established. Thus, Alonzo was on notice of the potential deficiencies in her report and acted at her own risk in failing to remedy those alleged deficiencies by serving an amended report within the thirty-day extension period granted by the trial court."

*Women's Clinic of South Texas v. Alonzo*, 2011 WL 1106698 at *3 (Tex. App. – Corpus Christi 2011, no pet.) (mem. op.).

In *Ledesma v. Shashoua*, No. 03-05-00454-CV (Tex. App. – Austin, May 23, 2008, pet. den.) (mem. op.), the Court likened the extension provisions in Chapter 74 to being given an opportunity to replead with special exceptions:

"The intent behind this extension is analogous to the purpose of special exceptions to civil pleadings, which is to "compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action." .... When a trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the defect cannot be cured. The expert-report requirement and the extension allowed by section 74.351(c), much like the concept of special exceptions and the opportunity to amend pleadings, should be used as procedural tools to help clarify the issues in complex litigation, rather than as a statutory trap for the unwary in what might otherwise be a meritorious claim."

*Id.* at *10 (J., Henson, Dissenting Opinion on Motion for Reconsideration *en banc*).

35

Appellant made specific objections to Appellee's expert report in his Chapter 74

Objections and Motion to Dismiss, noting, among other things that

1. the report failed to set forth a specific standard of care for Appellant;
2. the report failed to set forth specific violations of the standard of care by Appellant;
3. the report failed to properly address proximate cause, and;
4. Appellee did not establish that his expert witness was qualified to address proximate cause.

(1CR 29; 45; 1RR 4). As with the Plaintiffs in *Samlowski* and *Alonzo*, Appellee was not

ambushed; he knew what was deficient about the report and sought and received an

extension to cure those deficiencies. Appellant should not be penalized because

Appellee failed to utilize the thirty-day extension to cure those deficiencies.

**C. Conclusion: Appellee's expert reports were inadequate even after the extension to cure and the court abused its discretion by not dismissing Appellee's suit.**

In *Samlowski*, the plurality opinion announced a new requirement when a

motion for extension is denied:

> "The claimant must therefore be prepared to cure a deficient expert report whether or not the trial court grants the claimant's motion [for a thirty-day extension]. When, as in this case, the trial court simultaneously finds the expert report deficient, denies a motion to cure, and dismisses the underlying health care liability claim, the claimant must move the court to reconsider and promptly fix any problems with the report. This should further be done within the statutory, thirty-day period, thereby demonstrating that the report would have been cured had the extension been granted."

*Samlowski*, 332 S.W.3d at 411.

Thus, when a Motion for Extension is denied, a claimant must now file a curative expert report within thirty days in order to later be able to argue that the trial court abused its discretion. How can we demand less from claimants who have actually prevailed in their request for a thirty-day extension and reward them for not curing the expert report during those thirty days?

Appellees' experts' reports were inadequate and they failed to cure the deficiencies. Their claims against Appellants should be dismissed.

## VI. Appellant is entitled to Attorneys' Fees and Costs.

Since Appellee failed to comply with the strict requirements of Chapter 74, an award of attorneys' fees is also mandatory. Tex. Civ. Prac. & Rem. Code §74.351(b). Appellant seeks remand for consideration of the fees and expenses to which he is entitled.

## CONCLUSION AND PRAYER

The trial court abused its discretion when it failed to dismiss Appellee's lawsuit and instead granted Appellee a thirty-day extension to cure deficiencies in an expert that was so incomplete that it was "no report" as to Appellant. Appellee's expert report was not merely inadequate, it was not capable of cure since it did not address any of the statutorily required elements (standard of care, breach, or proximate cause) and further was from a witness who was not qualified. The trial court had no discretion to do anything other than dismiss Appellee's lawsuit.

The trial court also abused its discretion in failing to dismiss after Appellee filed an attempted curative report since it too failed to meet the strict requirements of Chapter 74.

Accordingly, Appellant respectfully prays that this Court reverse the trial court's decision, dismiss Appellee's claims with prejudice and Order attorneys' fees and costs be awarded pursuant to Chapter 74. Further, Appellant requests any other and further relief to which he is justly entitled.

Respectfully submitted,

UZICK & ONCKEN, P.C.

By:_____
Roger A. Berger
SBOT: 02192400
rberger@uzickoncken.com
Jeffrey H. Uzick
SBOT: 20419200
jhu@uzickoncken.com
238 Westcott
Houston, Texas 77007
(713) 869-2900
FAX: (713) 869-6699
Counsel for Appellant
Kevin D. Wheeler, M.D.

## CERTIFICATE OF SERVICE

Pursuant to TEX. R. CIV. P. 21a and TEX. R. APP. P. 25.1 (e), I hereby certify that a true and correct copy of the foregoing instrument has been served upon Appellees' counsel by certified mail, return receipt requested.

John J. Klevenhagen
Jones Morris Klevenhagen, LLP
6363 Woodway, Suite 300
Houston, Texas 77057
Tel: 713-589-5061
Fax: 713-589-5513
Email: john@jmkllp.com

DATE: February 6, 2015.

_____
Roger A. Berger

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 8683 words (excluding the caption, identity of the parties and counsel, table of contents, index of authorities, statement of the case, statement of jurisdiction, statement regarding oral argument, issues presented, signature, proof of service, certification, certificate of compliance, and Appendix). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____
Roger A. Berger

# No. 14-14-00992-CV

## IN THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

KEVIN D. WHEELER, M.D., Appellant

vs.

CHARLES F. LUBERGER, Appellee

Appeal of Cause No. 2014-07070,
in the 157th Judicial District Court,
Harris County, Texas, Honorable Randy Wilson

## APPENDIX

1. Order granting thirty-day extension to cure and denying Appellant's Chapter 74 Motion to Dismiss (September 8, 2014)

2. Order denying Appellant's second Chapter 74 Motion to Dismiss (November 21, 2014)

3. Report of Atif Iqbal, M.D., June 12, 2014

4. "Curative" report of Oluwole Fajolu, M.D., October 8, 2014

5. Tex. Civ. Prac. & Rem. Code §74.351 (in effect on date Petition filed)

P1
DISMY

## CAUSE NO 2014-07070

| | | |
|---|---|---|
| Luberger | § | IN THE DISTRICT COURT OF |
| | § | |
| v | § | HARRIS COUNTY, T E X A S |
| | § | |
| Wheeler, et al | § | 157th JUDICIAL DISTRICT |

### Order

Plaintiff's expert report is deficient, but defendant Wheeler's motion to dismiss is denied

at this time   Plaintiff is granted a 30 day extension to provide a new report

Signed September 8, 2014

_____

Hon  Randy Wilson

FILED
Chris Daniel
District Clerk

SEP - 8 2014

Time _____
Harris County, Texas
By_____
Deputy

RECORDER S MEMORANDUM
This instrument is of poor quality
at the time of imaging

56

CAUSE NO. 2014-07070

P1
DISMY

| | | |
|---|---|---|
| CHARLES F. LUBERGER | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KEVIN D. WHEELER, M.D.; | § | |
| W. CLAY ALBRECHT, M.D. AND | § | |
| MEMORIAL CITY SURGICAL | § | |
| ASSOCIATES D/B/A MEMORIAL AND | § | |
| KATY SURGICAL SPECIALISTS | § | 157th JUDICIAL DISTRICT |

## **ORDER**

After considering Defendant's Second Chapter 74 Objections and Second Motion to Dismiss, the Court overrules the objections and denies the motion to dismiss.

SIGNED on ___Nov. 21___, 2014

JUDGE PRESIDING

FILED
Chris Daniel
District Clerk

NOV 21 2014

Time: _____ Harris County, Texas
By_____ Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

76

June 12, 2014

John Klevenhagen

6363 Wood way, Suite 300

Houston, Texas 77057

RE: Charles F. Luberger

Dear Mr. Klevenhagen:

I have reviewed the medical records from the Memorial City Surgical Associates for Mr. Luberger. He presented to Dr. Kevin D. Wheeler at Memorial City Surgical Associates gall bladder disease which was confirmed by radiographic studies.

Mr. Luberger was seen by Dr. Wheeler in his office as a routine patient with biliary colic. He was scheduled to undergo for an elective cholecystectomy week after the office visit on 6/14/2012. Patient case was started as SILS (Single Incision Laparoscopic Surgery) and later converted to open procedure due to intraoperative complication resulting in bile duct injury.

Comprehensive review of all documents especially operative report indicate a complex iatrogenic bile duct injury. In my opinion that require hepato biliary surgeon as the reconstruction procedure is complicated and if not done right it leads to prolong morbidity and some case mortality. I feel that intra operative consult should have been called by Dr. Wheeler instead of trying to fix the injury by himself unless he does routinely hepato biliary procedures. Operative report has some elements of confusion suggesting doubts about the integrity of final repair. This might be the reason of prolong recovery of Mr. Luberger.

Please feel free to contact me should you have any questions.

Atif Iqbal, MD, FACS, FASMBS

18111 Brookhurst Street

Fountain Valley, CA. 92618



PLAINTIFF'S EXHIBIT

16

Oluwole Fajolu, M.D., F.A.C.S.
Thoracic and General Surgery
5015 Kelvin Avenue
Woodland Hills, CA 91364

October 8, 2014

John J. Klevenhagen III
6363 Woodway, Suite 300
Houston, Texas 77057

   Re: Charles F. Luberger.

Dear Mr. Klevenhagen:

   I have reviewed the medical records from Memorial City Surgical Associates, including the intraoperative images, and St. Luke's Hospital for Mr. Luberger. I am a Board Certified surgeon in active practice in Woodland Hills, California since 1985. I have treated patients such as Mr. Luberger who suffer from gall bladder problems. I have performed laparoscopic gall bladder removal surgery on patients just like Mr. Luberger hundreds of times. I am familiar with the standard of care required for Dr. Wheeler's treatment of Mr. Luberger. I am qualified and familiar with the standard of care by education, training and experience to assess the quality of care provided to such patients to render an expert opinion regarding such care.

   My credentials are detailed in the attached CV, but in summary, I earned my medical degree from Calcutta Medical College at Calcutta University in India. I then served general surgery residencies at Lagos University Teaching Hospital, Harlem Hospital in New York and Columbia Presbyterian Hospital with Columbia University. I followed that with a cardiothoracic surgery residency at long Island Jewish Hospital in New York.

   I am licensed to practice medicine in California and my license is recorded with the appropriate authorities.

   Mr. Luberger presented to Dr. Kevin D. Wheeler at Memorial City Surgical Associates for gall bladder disease, which was confirmed by radiographic studies. Mr. Luberger was scheduled for a laparoscopic cholecystectomy on June 14, 2012. During the surgery, the common bile duct was transected and the procedure was converted to a laparotomy. Dr. Wheeler fashioned a Roux-en-Y hepaticojejunostomy in an attempt to repair the damage. The treatment rendered by Dr. Wheeler was below the standard of care, specifically relating to the common bile duct injury. In treating Mr. Luberger, the standard of care required Dr. Wheeler to carefully identify the biliary tract anatomy, specifically the cystic duct, and only cut the cystic duct to remove the gallbladder. He fell below the standard of care in cutting the common bile duct.



DEFENDANT'S EXHIBIT
1

I am familiar with the standard of care applicable to Dr. Wheeler for treating patients like Mr. Luberger based on my education, experience, training and attending seminars as well as my review of current peer reviewed literature regarding proper technique for laparoscopisc cholecystectomies. Please see my CV attached. Moreover, I have performed this specific operation hundreds of times on patients just like Mr. Luberger, and am familiar with standard of care required. I am intimately familiar with the management of patients similar to and like Mr. Luberger. I have admitted, followed and treated numerous patients with the same or similar conditions as Mr. Luberger.

The standard of care required Dr. Wheeler to carefully identify the common bile duct and to not cut it. He violated the standard of care regarding Mr. Luberger by failing to properly identify the biliary anatomy and by cutting common bile duct.

Instead, the treatment for Mr. Luberger should have included properly identifying the anatomy, avoiding cutting the common bile duct, and only cutting the cystic duct to laparoscopically remove the gallbladder. If he had avoided cutting the common bile duct, in reasonable medical probability, Mr. Luberger's procedure would not have had to be converted to an open surgery (laparotomy) and the Roux-en-Y hepaticojejunostomy would not have been needed. Also, in reasonable medical probability, Mr. Luberger's post operative cholangiograms, liver function tests, subsequent months of abdominal pain and subsequent surgical procedures (including the biliary drainage catheters) would not have occurred.

As a consequence of these errors, the substandard care of Dr. Wheeler caused Mr. Luberger permanent scarring, additional pain and additional otherwise unneeded surgical procedures. Dr. Wheeler's substandard care resulted in additional injury to Mr. Luberger's abdominal area, which but for the common bile duct injury, would not have occurred.

Best Regards,

Oluwole Fajolu, M.D., F.A.C.S.

67


C

**Effective: September 01, 2005**

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 74. Medical Liability (Refs & Annos)
        Subchapter H. Procedural Provisions (Refs & Annos)

→ § 74.351. Expert Report

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

  (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

  (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

[Subsections (d)-(h) reserved]

(i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

(j) Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k) Subject to Subsection (t), an expert report served under this section:

  (1) is not admissible in evidence by any party;

  (2) shall not be used in a deposition, trial, or other proceeding; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V.T.C.A., Civil Practice & Remedies Code § **74.351**

(3) shall not be referred to by any party during the course of the action for any purpose.

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

[Subsections (m)-(q) reserved]

(r) In this section:

(1) "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

(2) "Claim" means a health care liability claim.

[(3) reserved]

(4) "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

(5) "Expert" means:

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

(B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

V.T.C.A., Civil Practice & Remedies Code § **74.351**

(2) depositions on written questions under <u>Rule 200, Texas Rules of Civil Procedure</u>; and

(3) discovery from nonparties under <u>Rule 205, Texas Rules of Civil Procedure</u>.

(t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u) Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

CREDIT(S)

Added by <u>Acts 2003, 78th Leg., ch. 204, § 10.01, eff. Sept. 1, 2003</u>. Amended by <u>Acts 2005, 79th Leg., ch. 635, § 1, eff. Sept. 1, 2005</u>.

HISTORICAL AND STATUTORY NOTES

2006 Electronic Pocket Part Update

2005 Legislation

Acts 2005, 79th Leg., ch. 635, in subsec. (a), in the first sentence substituted "the original petition was filed" for "the claim was filed".

Section 2 of Acts 2005, 79th Leg., ch. 635 provides:

"This Act applies only to a cause of action that accrues on or after the effective date of this Act. An action that accrued before the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose."

2005 Main Volume

**Prior Laws:**
    Acts 1993, 73rd Leg., ch. 625, § 3.
    Acts 1995, 74th Leg., ch. 140, § 1.
    <u>Vernon's Ann.Civ.St. art. 4590i, § 13.01</u>.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.