Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-11-00493-CV

**LAREDO TEXAS HOSPITAL COMPANY, L.P.** d/b/a Laredo Medical Center,
Laredo Texas Hospital Company, L.P. d/b/a LMC North,
Viviana Espinosa, and Jeanette England,
Appellants

v.

Evangelina **GONZALEZ**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2010-CVQ-001005-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  January 11, 2012

REVERSED AND REMANDED

Laredo Texas Hospital Company, L.P. d/b/a Laredo Medical Center, Laredo Texas Hospital Company, L.P. d/b/a LMC North, Viviana Espinosa, and Jeanette England (collectively, the "medical defendants") appeal the trial court's order denying their motion to dismiss the underlying medical malpractice lawsuit.  Because we conclude that the only expert report filed within the 120-day statutory deadline fails to implicate the conduct of any medical defendant, we

reverse the trial court's order denying the motion to dismiss and remand to the trial court for entry of judgment.

## BACKGROUND

Evangelina Gonzalez sued four health care providers—Laredo Texas Hospital Company, L.P. d/b/a Laredo Medical Center, and Laredo Texas Hospital Company, L.P. d/b/a LMC North (together, "defendant LMC"), Monte Allen, M.D., Viviana Espinosa, and Jeanette England—for medical negligence in the insertion of an IV needle into her left wrist resulting in the development of a painful neuroma. Gonzalez timely filed a two-page document authored by Lowery Thompson, M.D. in order to meet the requirements of Texas Civil Practice and Remedies Code section 74.351 (the "Act"). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party . . . one or more expert reports . . . for each physician or health care provider against whom a liability claim is asserted."). After receipt of Dr. Thompson's report, all the medical defendants filed motions to dismiss Gonzalez's lawsuit, challenging the sufficiency of Dr. Thompson's report. Thereafter, Gonzalez non-suited one defendant, Dr. Monte Allen, and, prior to the hearing on the remaining motions to dismiss, filed a written response. In that response, Gonzalez denied that the Thompson report was deficient, but argued, in the alternative, for an extension of time to cure any deficiencies. After a hearing, the trial court granted Gonzalez's request for a 30-day extension of time to cure the report's deficiencies as allowed under Texas Civil Practice and Remedies Code section 74.351(c). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West 2011) ("If an expert report has not been served within the period specified . . . because elements of the report are found

deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.").

Gonzalez then timely filed a supplemental two-page report authored by Karen Jensen, RN, BSN, CCM, and re-filed the same Thompson report that had previously been provided.[1] The remaining medical defendants filed a second motion to dismiss Gonzalez's lawsuit for failure to comply with the statutory requirements. The trial court denied the second motion to dismiss, and defendants LMC, Viviana Espinosa, and Jeanette England now appeal.

## ANALYSIS

On appeal, the medical defendants first argue that the Thompson report—the only report filed within the 120-day deadline—is so legally defective as to constitute in law "no report" against them, thereby mandating dismissal under section 74.351(b). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). The Texas Supreme Court recently addressed the question of whether a document tendered as an expert report can be so lacking in substantive content so as to prevent it from qualifying as an expert report. *See Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). In a lengthy opinion, the court examined both the stated purpose and text of the Medical Liability Act and several prior opinions that touched on the tension between a report that is merely deficient and a report that is utterly devoid of substantive content so that it constitutes "no report." *Id.* at 556. The court noted, "[w]hile the Act [] contemplates that a document can be considered an expert report despite its deficiencies, the Act does not suggest that a document utterly devoid of substantive content will qualify as an expert report." *Id.* at 549. In determining where to draw the line between a deficient report and "no report," the court noted that, "[a]n individual's lack of relevant qualifications and an opinion's inadequacies are

---

[1] It is undisputed that Gonzalez served the respective curriculum vitae of each individual with the reports of Dr. Thompson and Nurse Jensen.

deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." *Id.* "An inadequate expert report does not indicate a frivolous claim if the report's deficiencies are readily curable." *Id.* at 556. When a document is so lacking in substance that it does not qualify as an expert report under the Act, however, it does not warrant a thirty-day extension, but rather requires dismissal. *Id.* at 549, 558 (Willett, J., concurring and noting that the majority's opinion is intended to "brighten the line between deficient-report cases (where an extension is discretionary) and no-report cases (where dismissal is mandatory)"). The court ultimately set forth a three-prong test for when a 30-day extension to cure deficiencies in an expert report is warranted: (1) if the report is served by the statutory deadline; (2) if it contains the opinion of an individual with expertise that the claim has merit; and (3) if the defendant's conduct is implicated. *Id.* at 557. The court characterized its three-prong test as a minimal standard, thus suggesting the trial courts are to be lenient in granting such extensions. *Id.*

Turning to the report before us, Dr. Thompson begins by briefly listing his professional background and credentials, which include that he is a diplomat of the American Board of Psychiatry and Neurology and is familiar with peripheral nerve injuries of the radial nerve. Thereafter, he states he was retained "to address the question as to whether or not the initial attempt to insert an intravenous catheter in the dorsal lateral aspect of Evanglina [sic] Gonzalez's left wrist . . . on March 25, 2008 was causal in the subsequent development of a painful neuroma involving that nerve." Dr. Thompson then lists the medical records that he reviewed: (a) Dr. Monte D. Allen's records for Gonzalez from January 21, 2002 through February 5, 2010; (b) Laredo Medical Center's records for Gonzalez from March 18, 2008 through March 26, 2008; and (c) Dr. Mark Bragg's records for Gonzalez from May 30, 2008 through April 3, 2009. Based on these medical records, Dr. Thompson's report reaches the following conclusions:

- The superficial (sensory) branch of Evanglina [sic] Gonzalez's left radial nerve was injured by the initial insertion of the intravenous catheter.

- This injury led to the development of a painful neuroma of the described nerve.

- The pain from this neuroma was not resolved by initial efforts at therapy.

- Surgical intervention entailing excision of the neuroma from the superficial branch of the left radial nerve was ultimately required in addition to additional physical therapy modalities and medication for neuropathic pain.

- Based upon my training and experience, it is my medical judgment that the initial attempt at insertion of the intravenous catheter was more likely than not the cause of the development of the painful neuroma involving the superficial branch of the left radial nerve in Evanglina [sic] Gonzalez.

Thompson's report is clearly deficient as an expert report because it omits most, if not all, of the statutorily required elements. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2011) (defining "expert report" to mean "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury"); *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) (all statutory requirements must be present to constitute a good faith effort). Thompson expressly limits his opinion to causation, opining that the initial insertion of the intravenous catheter caused Gonzalez's injury; however, he does not identify who performed that procedure. In addition, Thompson never attempts to state the applicable standard of care, how

any defendant failed to meet that standard, or even if a failure in the standard of care occurred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Palacios*, 46 S.W.3d at 879.

The trial court obviously found Thompson's report was deficient, and granted the motion for a 30-day extension to cure the deficiencies. The trial court's decision to grant this one-time extension was not immediately appealable. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2011); *Scoresby*, 346 S.W.3d at 555. As noted, *supra*, during the 30-day extension Gonzalez filed a report by Nurse Jensen to supplement the Thompson report; the medical defendants filed a second motion to dismiss which was denied. As part of this appeal from the order denying the second motion to dismiss, the medical defendants first argue that the extension was not warranted because the Thompson report was so legally defective as to constitute "no report." Therefore, we must determine if the Thompson report meets the three-prong *Scoresby* test and merely contains curable deficiencies, or fails the test and constitutes "no report" thereby mandating dismissal. *Scoresby*, 346 S.W.3d at 551, 557.

It is undisputed that the Thompson report meets the first prong because it was served within the 120-day period. As to the second and third prongs, assuming without deciding that Dr. Thompson has the relevant expertise and that the report meets the second *Scoresby* prong, the report wholly fails to implicate the conduct of any medical defendant and thus fails the third prong. *Id.* at 557. The Thompson report wholly fails to name *any* of the medical defendants. *See Garcia v. Marichalar*, 185 S.W.3d 70, 73-74 (Tex. App.—San Antonio 2005, no pet.) (report which focused on conduct of other defendants but did not mention defendant Garcia at all was no report as to Garcia and dismissal with prejudice was proper). In addition, the Thompson report contains no statement that can be read as implicating the conduct of any medical defendant; it is absolutely devoid of any reference, either directly or by inference, to the medical

defendants. *C.f. Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) (trial court granted an extension when report was served that implicated Dr. Ogletree's conduct). As noted by Justice Willett in his concurring opinion in *Scoresby*, "[i]f a document bears zero resemblance to what the statute envisions—more to the point, *if it never asserts that anyone did anything wrong*—it cannot receive an extension." *Scoresby*, 346 S.W.3d at 558 (Willet, J., concurring) (emphasis in original).

Here, we are not dealing with a report that meets the minimum standard of *Scoresby* and contains mere deficiencies that are readily curable; rather, the Thompson report completely omits the names of the individual defendants and wholly fails to implicate the conduct of any medical defendant. Because the Thompson report, which was the only report filed within the 120-day deadline, is so legally defective as to constitute in law "no report" against the medical defendants under *Scoresby*, dismissal is mandatory.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). Accordingly, we reverse the trial court's order denying the motion to dismiss and remand for entry of a judgment of dismissal of the suit against all the medical defendants, with prejudice to re-filing, and for a determination of reasonable attorney's fees and costs.

Phylis J. Speedlin, Justice

---

[2] Because of our disposition of this issue, we need not reach the medical defendants' challenge as to the sufficiency of the combined reports.