

NUMBER 13-12-00101-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAFAEL A. AVILA, M.D.,                                        Appellant,

v.

EVA NELDA JIMENEZ, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF MARIO
M. JIMENEZ, M.D., DECEASED, NATALIA
JIMENEZ AND ANTONIO MANUEL JIMENEZ,          Appellees.

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides**

This interlocutory appeal arises from a healthcare liability claim under chapter 74

of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2011). By one issue, appellant Rafael A. Avila, M.D. contends the trial court abused its discretion when it denied his motions to dismiss because the only expert reports filed within the statutory deadline in this case constituted "no report" as to Dr. Avila. We affirm.

## I. BACKGROUND

On June 26, 2006, appellees Eva Jimenez, individually and as executrix of the estate of Mario M. Jimenez, M.D., Natalia Jimenez, and Antonio Jimenez, filed a lawsuit against several health care providers, including Dr. Avila, for alleged negligence in performing Mario Jimenez, M.D.'s (Dr. Jimenez's) umbilical hernia repair, liposuction, and abdominoplasty. The record shows that Dr. Jimenez died one day after his surgeries from a fat embolism.

Under section 74.351(a) of the civil practices and remedies code, an expert report against all the defendant health care providers in this case would have been due 120 days after the day of filing, or on October 26, 2006. *Id.* However, on October 23, 2006, the Jimenezes entered into a Rule 11 agreement with Dr. Avila to extend the expert report deadline as to him. The Rule 11 agreement provided, "Plaintiffs shall serve any and all expert report(s) required by Section 74.351 as to Dr. Avila no later than the fourteenth (14th) day after counsel for Plaintiffs receives the deposition transcript of Dr. Avila."

On October 24, 2006, the Jimenezes served the expert report of Jose Perez, M.D., F.C.C.P. to all the health care providers in the case, including Dr. Avila. Dr.

2

Perez, who is board certified in pulmonary diseases and critical care medicine, reviewed the deceased's medical records from: (1) Renaissance Surgical Center of South Texas; (2) Starr EMS; (3) Starr County Memorial Hospital; and (4) McAllen Medical Heart Hospital. Dr. Perez made the following observations:

- The standard of care requires assessment with complete [h]istory and [p]hysical [e]xamination prior to surgery. This is especially crucial for a diabetic patient, EKG, [s]tress [t]est, and [b]lood work are part of the examination.

- This patient would have been saved if the surgeries had been performed in a hospital setting with the facilities to have properly resuscitated him. The main surgery the patient went in for was hernia repair, which should have been done in a hospital.

This report did not mention any of the health care providers, including Dr. Avila, by name.

The Jimenezes served another report from their expert Dr. Perez on all the defendants on May 23, 2011.[1] This report was substantially similar to the October 24, 2006 report but added two new conclusions: (1) that "it fell below the standard of care to perform the surgeries in an ambulatory surgical center setting"; and that (2) "if such surgeries are performed in an ambulatory care setting, the patient must be observed at least overnight." Again, the report did not reference any specific caregivers by name.

Dr. Avila was deposed on July 8, 2011. The parties received his deposition

---

[1] We note the five-year difference between the time the lawsuit was filed in June 26, 2006 and the date of the expert report filed May 23, 2011. The reason for this lapse of time is because another interlocutory appeal, *Renaissance Surgical Ctrs.–South Tex. L.L.P. v. Jimenez*, No. 13-07-121-CV, 2008 Tex. App. LEXIS 6857 (Tex. App.—Corpus Christi Aug. 28, 2008, no pet.) (mem. op.), was filed during the pendency of this case.

transcript on August 24, 2011. According to the rule 11 agreement, this meant that the Jimenezes were required to file their expert report "as to Dr. Avila" by September 7, 2011. However, no additional expert report was served. On October 5, 2011, Dr. Avila filed a motion to dismiss, claiming that the Jimenezes failed to provide the requisite report under chapter 74. At the hearing on the motion, the Jimenezes' counsel asserted that the May 23, 2011 report was the chapter 74 report as to Dr. Avila. The trial court found the report deficient and granted the Jimenezes a 30-day extension to cure the document.

On December 7, 2011, the Jimenezes filed a new report by Dr. Perez which, for the first time, referenced Dr. Avila by name. Dr. Avila filed a second motion to dismiss, arguing that the May 23, 2011 report was "no report" as to Dr. Avila and the December 7, 2011 report was untimely. The trial court denied the second motion to dismiss, and this appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The Texas Supreme Court recently addressed whether a document tendered as an expert report can be so lacking in substantive content that it would constitute "no report" instead of a "deficient report." *See Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). In *Scoresby v. Santillan*, the high court discussed the evolving history and case law regarding the Texas Medical Liability Act and tried to draw a line between "no report" and a "deficient" one. *Id.* at 556. The *Scoresby* Court ultimately set forth a three-prong test for when a 30-day extension to cure deficiencies in an expert report is warranted: (1) when the report is served by the statutory deadline; (2) contains the

4

opinion that the claim has merit from an individual with expertise; and (3) implicates the defendant's conduct. *Id.* at 557. If these elements are not met, then the report constituted "no report" instead of a "deficient report," and no opportunity to cure should be granted. *Id.*

We review the trial court's decision to deny a motion to dismiss for failure to comply with the expert report requirement in a health care liability suit under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001)**.**

### III. DISCUSSION

Dr. Avila argues that the Jimenezes did not intend for either the October 24, 2006 report or the May 23, 2011 report to constitute an expert report against Dr. Avila. He contends that his rule 11 agreement with the Jimenezes contemplated producing a report "as to Dr. Avila" fourteen days after receipt of his deposition transcript. However, the Jimenezes did not produce a new report. Dr. Avila does not deny, though, that he received either the October 24, 2006 or May 23, 2011 reports.

The Jimenezes urge us to follow *Ogletree v. Matthews* to resolve the case in their favor. 262 S.W.3d 316, 317–18 (Tex. 2007). In *Ogletree*, the plaintiffs filed a health care liability lawsuit against Dr. Ogletree, a urologist, and the Heart Hospital of Austin for allegedly performing a negligent urinary catheterization procedure on John Matthews. *Id.* at 317. The plaintiffs alleged that the faulty procedure caused traumatic bruising, bladder perforation, and acute renal failure which led to Matthews's death. *Id.* The plaintiffs produced several expert reports, one of which was written by a physician, Dr.

Richard Karsh. *Id.* "Dr. Karsh's report was directed solely to Dr. Ogletree's care (although it did not mention him by name)." *Id.* Dr. Ogletree filed several objections to Dr. Karsh's report. *Id.* at 318. The trial court deemed the report insufficient and granted the plaintiffs a 30-day reprieve to "cure" the report. *Id.* Dr. Ogletree appealed.

Deciding the case on a procedural point, the Texas Supreme Court held that "because a report that implicated Dr. Ogletree's conduct was served and the trial court granted an extension," they could not reach the merits of the case. *Id.* at 321. Based on this holding, though, the Jimenezes urge us to use *Ogletree* for the proposition that a defendant's name does not have to be used in an expert report as long as the defendant's conduct is "implicated" in the report. *Id.* Applying *Ogletree* to the facts at hand, the Jimenezes assert that Dr. Avila's conduct was implicated with the statements in Dr. Perez's report (1) that "it fell below the standard of care to perform the surgeries in an ambulatory surgical center setting"; and that (2) "if such surgeries are performed in an ambulatory care setting, the patient must be observed at least overnight."

Dr. Avila, on the other hand, asks us to follow *Laredo Texas Hospital Company v. Gonzalez,* where the San Antonio Court of Appeals recently applied the *Scoresby* test. 363 S.W.3d 255, 258 (Tex. App.—San Antonio 2012, no pet.). In *Gonzalez,* the San Antonio appellate court held that the expert report at issue constituted no report because it "wholly fail[ed] to implicate the conduct of any medical defendant and thus fail[ed]" the third prong of the *Scoresby* test. *Id.* The report also "wholly fail[ed] to name *any* of the medical defendants." *Id.* at 258–59 (citing *Garcia v. Marichalar*, 185 S.W.3d 70, 73–74

(Tex. App.—San Antonio 2005, no pet.) (emphasis in original) (holding that a report that did not mention the defendant Garcia was no report at all as to Garcia and that a dismissal with prejudice was therefore proper).

We find this case factually distinguishable from *Gonzalez* in one major way: our Court has previously analyzed the May 23, 2011 expert report by Dr. Perez in another interlocutory appeal arising from the same trial cause number. *See Renaissance Surgical Ctrs.–South Tex. L.L.P. v. Jimenez,* No. 13-07-121-CV, 2008 Tex. App. LEXIS 6857 (Tex. App.—Corpus Christi Aug. 28, 2008, no pet.) (mem. op.). In *Jimenez,* the defendant Renaissance Surgical Centers argued that Dr. Perez's expert report was conclusory and did not constitute a good-faith effort to comply with chapter 74's expert report requirements. *Id.* at *25. Similar to the underlying case, Renaissance Surgical Centers argued that the report did not even mention it by name. We held as follows:

> Although Perez's report did not identify the specific treatments that could have been applied to [Dr. Jimenez's] fat emboli, the report states clearly that "[h]ad Mario Jimenez, M.D. been placed in a hospital setting with the ability to provide supportive therapy and care to timely treat the development of the fat emboli, it is my medical opinion that more likely than not Mario Jimenez, M.D. would have survived the episode that took his life on April 14, 2004." This was certainly enough to "inform the defendant of the specific conduct the plaintiff has called into question" and "provide a basis for the trial court to conclude that the claims have merit."

*Id.* at **29–30 (internal citations omitted).

In light of our previous opinion in *Jimenez,* wherein we found Dr. Perez's report sufficient as to Renaissance Surgical Centers, 2008 Tex. App. LEXIS 6857 at *30, we conclude that Dr. Perez's May 23, 2011 report constituted a sufficient report as to Dr.

7

Avila, too.[2]  It is of no import that Dr. Avila was not named in the report, because his conduct was "implicated" when Dr. Perez opined that the surgery should have been conducted in a hospital and that the patient Jimenez should have been admitted for overnight observation.  *See Ogletree*, 262 S.W.3d at 317–18.  And while we acknowledge that the parties entered into a Rule 11 agreement which extended the period of time by which the Jimenezes could have filed another expert report, it does not take away from the fact that a sufficient expert report as to Dr. Avila was filed within the agreed-upon timeframe.   We overrule Dr. Avila's sole issue.

### IV. CONCLUSION

We affirm the trial court's order denying Dr. Avila's motion to dismiss.

_____
GINA M. BENAVIDES,
Justice

Dissenting Memorandum Opinion
by Justice Gregory T. Perkes.

Delivered and filed the
11th day of April, 2013.

---

[2] The dissent fails to acknowledge our previous decision in *Renaissance Surgical Ctrs.–South Tex. L.L.P. v. Jimenez,* No. 13-07-121-CV, 2008 Tex. App. LEXIS 6857 (Tex. App.—Corpus Christi Aug. 28, 2008, no pet.) (mem. op.) or explain why we should abandon our previous precedent.  *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 749–50 (Tex. 2006) (holding that courts are "bound to consider the principles of stare decisis").