

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00645-CV

**TEXAS LAUREL RIDGE HOSPITAL, L.P.** d/b/a Laurel Ridge Treatment Center,
Appellant

v.

Jane **DOE**, Individually and as Next Friend of Minor Doe, a Minor,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-17725
Honorable Lisa Jarrett, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: June 25, 2025

REVERSED AND REMANDED

The issue in this appeal involves the qualification of experts and the sufficiency of expert reports as required by Chapter 74 of the Texas Civil Practice & Remedies Code, also known as the Texas Medical Liability Act (TMLA). The TMLA requires health care liability claimants to serve an expert report upon each defendant not later than 120 days after each defendant's answer is filed. TEX. CIV. PRAC. & REM. CODE § 74.351(a). The purpose of this threshold requirement "is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially

meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). Appellant Texas Laurel Ridge Hospital, L.P. argues the trial court abused its discretion in failing to find the expert reports filed by Jane Doe deficient and in failing to grant its motion to dismiss. We reverse the trial court's September 23, 2024 order overruling Laurel Ridge's objections to Doe's Chapter 74 expert reports and remand the matter to the trial court to consider whether the claimant should have an opportunity to cure the expert report deficiencies.

## FACTS

On February 20, 2021, Minor Doe was admitted to Laurel Ridge Treatment Center, a local behavioral health/psychiatric facility which offers both inpatient admissions and outpatient programming for adults and adolescents. Minor Doe was evidently not responding to outpatient treatment and was demonstrating irritability and suicidal tendencies. As a result of her initial evaluation of Minor Doe upon admission, Dr. Grace Salinas-Garcia ordered Minor Doe be given 24-hour skilled nursing observation, supervision and intervention. Minor Doe was placed among other patients, given a room with one roommate, and checked on four times an hour. However, amidst those checks, Minor Doe alleges he was sexually assaulted by his roommate, a fellow patient. Specifically, a nurse's note states that at 6:00 am, Minor Doe asked to be removed from his room because his roommate was masturbating. At 4:15 pm the same day, Minor Doe told staff that he'd been sexually abused at 2:00 am that same morning. He was then transported to the Children's Hospital and was discharged from Laurel Ridge the next day.

Jane Doe, individually and as next friend of Minor Doe, filed this suit under Chapter 74 of the Texas Civil Practice & Remedies Code on April 25, 2023. Doe served expert disclosures pursuant to Texas Rule of Civil Procedure 195.5(a) on July 6, 2023 but did not include expert reports. She did, however, file an expert report from Arnold Mackles, M.D. on September 27, 2023, within 120 days of Laurel Ridge's filing of its answer. *See* TEX. CIV. PRAC. & REM. CODE

§ 74.351(a) (requiring expert report to be filed within 120 days of defendant's answer). Prior to filing the lawsuit, she also forwarded to Laurel Ridge two letters by a counselor, Daniel Arredondo, LPC/LSOTP, who was treating Minor Doe.

Laurel Ridge filed objections to the qualifications of Arredondo and to the sufficiency of his reports on July 27, 2023. Laurel Ridge also filed objections to the qualifications of Dr. Mackles and to the sufficiency of his reports on October 18, 2023. Both filings were timely. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). On September 23, 2024, the trial court entered an order overruling Laurel Ridge's objections and denying its motion to dismiss. Laurel Ridge then filed this appeal.

## STANDARD OF REVIEW

We review a trial court's ruling on the sufficiency of a Chapter 74 expert report for abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). Under an abuse of discretion standard, we defer to any factual determinations made by the trial court supported by evidence, and we review the trial court's legal determinations de novo. *Id*. The trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A clear failure by the trial court to apply the law correctly will constitute an abuse of discretion. *Id.*

To advance a health care liability claim, a claimant must serve the defendant with an expert report that includes "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). If a defendant objects to the sufficiency of the report, the trial court may either overrule the objections or grant one thirty-day extension of time to the claimant to give them an opportunity to cure the deficiency if a report's deficiencies

are curable. TEX. CIV. PRAC. & REM. CODE § 74.351(c); *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017) ("The Act allows a trial court to grant one 30-day extension to cure a deficiency in an expert report, and a court must grant an extension if a report's deficiencies are curable." (footnote omitted)); *Loaisiga v. Cerda*, 379 S.W.3d 248, 263 (Tex. 2012) (remanding to trial court to consider whether to grant extension of time to cure expert reports).

"A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE § 74.351(*l*). An expert report is considered adequate if it meets the "fair summary" standard set out above. *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 342–43 (Tex. 2024) (alterations in original) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6)); *E.D. by & through B.O. v. Texas Health Care, P.L.L.C.*, 644 S.W.3d 660, 662 (Tex. 2022) (same). An expert report meets the good-faith effort requirement if "it '(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'" *Baptist St. Anthony's Hosp.*, 703 S.W.3d at 343 (alterations in original) (quoting *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018)). The purpose of these requirements 'is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims.'" *Baptist St. Anthony's Hosp.*, 703 S.W.3d at 343 (quoting *Abshire*, 563 S.W.3d at 223).

### ARNOLD MACKLES, M.D.

#### A. Sufficiency of Expert Qualifications

Laurel Ridge first argues Dr. Mackles lacked the qualifications necessary to offer an opinion on the subject matter and further argued his expert report failed to adequately outline the appropriate standard of care or link the breach of such care to the proximate cause of Minor Doe's

injuries. Dr. Mackles was a licensed neonatologist, a medical professional specializing in the care of newborn babies, particularly those born prematurely, from 1983–2005. While still holding a license to practice medicine in Florida and New York, there is nothing in his curriculum vitae or report showing that he still does so. In fact, according to his report and curriculum vitae, he changed his focus twenty years ago, in 2005, from the practice of neonatology to consulting, speaking and training on risk management and patient safety issues.[1] In his report, Dr. Mackles states:

> As a patient safety advocate and educator for the past 17 years, I have lectured to audiences of healthcare professionals throughout the USA, including multiple venues in Texas, teaching best practices to improve patient safety in healthcare facilities, reduce adverse patient medical events, improve healthcare communication, reduce medical errors, and practice safe medical and nursing care. I have authored a library of accredited continuing medical and nursing education courses on patient safety topics which are currently available online. These courses include the topics of creating a culture of safety in healthcare, improving healthcare communication, nursing and physician handoffs of medical information, prevention of medical errors, "never events" (events which should never occur in healthcare), and effective transitions of care as patients move through the healthcare continuum from one provider to another.

But, nowhere in his description of his consulting, speaking and training activities does he mention anything like the issue at hand—the appropriate supervision of a patient admitted to a behavior health/psychiatric facility. Although he states, "I am experienced in the identification of root causes of adverse medical, nursing and residential treatment center preventable care events," he does not detail what that experience entailed or how he acquired it.

Under Section 74.402(b) of the Texas Civil Practice and Remedies Code, a person may qualify as an expert witness on the appropriate standard of care and the breach thereof in a particular case if it is shown that the potential expert (1) "is practicing health care in a field of

---

[1] He was formerly licensed as a healthcare risk manager in the state of Florida, but he admits that license is no longer in effect.

practice that involves the same type of care or treatment as that delivered by the defendant"; (2) "has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim"; and (3) "is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care." TEX. CIV. PRAC. & REM. CODE § 74.402(b). With regard to the first requirement, whether an expert is "practicing health care," that could mean the expert (1) trains health care providers in the same field as the defendant at an accredited educational institution or (2) serves as a consulting health care provider and is licensed, certified, or registered in the same field as the defendant. *Id.* § 74.402(a). With regard to the last requirement, to determine whether an expert is qualified on the basis of training or experience, section 74.402(c) states "the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim." *Id.* § 74.402(c).

Dr. Mackles is not and has not practiced medicine involving the same type of care or treatment as that delivered here. *See id.* § 74.402(c). He is not licensed, certified, or registered in the same field as the defendant. *See id.* He does not have substantial training or experience in the area of the health care relevant to Doe's claim. *See id.* He does not train health care providers at an accredited educational institution. *See id.* § 74.402(a). And even though he consults as a patient safety advocate, he is not licensed, certified, or registered to do so and there is no indication from his report that he does so with relation to care provided in behavioral health/psychiatric facilities. *See id.*; *see also Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996) (holding claimant has burden to demonstrate expert's qualifications within four corners of expert report and curriculum

vitae); *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (same).

The trial court must ensure that those who purport to be experts truly have the expertise concerning the actual subject about which they are offering an opinion. *See Broders*, 924 S.W.2d at 152. Because the trial court did not do so, failing to recognize that Dr. Mackles's experience and qualifications do not meet the statutory requirements, we hold the trial court abused its discretion in overruling Laurel Ridge's objections in that regard. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

### B. Sufficiency of Expert Opinion Offered

Laurel Ridge further argues that Dr. Mackles's opinions are so conclusory that they fail to make a good faith effort to comply with the definition of an expert report in Chapter 74. As set forth above, subsection (r)(6) defines an "expert report" as "a written report by an expert" providing "a fair summary of the expert's opinions as of th[at] date . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *see Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 185 S.W.3d 65, 67–70 (Tex. App.—San Antonio 2005, pet. denied) (reversing trial court's dismissal because report complied with subsection (r)(6)).

With regard to the first component, the applicable standards of care, Dr. Mackles states in his report,

> "I am well versed in the applicable standards of care concerning patient safety in all healthcare settings, including psychiatric hospitals and psychiatric treatment centers. In addition I am aware of the need for healthcare providers and care takers to follow facility policies as well as established medical and nursing protocols and guidelines for patient care and, of course, state and governmental regulations concerning residential care settings, to ensure safe, quality care for patients."

Dr. Mackles, though, does not detail any specific standard of care applicable to a psychiatric facility, does not raise any facility policy, protocol or guideline for patient care that would apply here, and does not raise any state or governmental regulation concerning residential care settings that would serve to inform the standard of care in this case.

Instead, in an attempt to set forth a standard of care in this case, Dr. Mackles states,

"The standard of care for all healthcare facilities is to ensure that patients receive treatment in an environment that is safe, which protects them from physical and mental harm as well as from sexual abuse. Psychiatric hospitals and treatment centers have the added standard responsibility of identifying and protecting patients who may be at risk of self harm and or causing harm to other patients. Joint Commission Standard RI 01.06.03 states "The patient has the right to be free from neglect, exploitation and verbal, mental physical and sexual abuse.""

Such is not a standard of care as much as it is an imposition of strict liability for any healthcare facility in which abuse occurs. *See* TEX. CIV. PRAC. & REM. CODE § 74.402(b)(2) (requiring showing that he has "knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim"). Dr. Mackles also cites to Laurel Ridge's website saying it established the standard of care by posting "[t]he safety of your child is the number one priority during their stay at our facility and our goal at Laurel Ridge Treatment Center is to provide a safe and structured environment for your child or teen's psychiatric treatment." But, again, such a statement does not set forth a standard of care, specifically setting out what the facility should have done in this case upon admission of Minor Doe with regard to his care and supervision. *Cf. HMIH Cedar Crest, LLC v. Christina Buentello, Individually & As Next Friend of D.B.J.*, No. 03-20-00377-CV, 2022 WL 627226, at *5 (Tex. App.—Austin Mar. 4, 2022, no pet.) (concluding report involving psychiatric facility vague and conclusory where report failed to set out measures that facility should have taken in assessing, treating, and transporting child and did not inform either facility or trial court what applicable standards were other than that facility failed to meet those undefined standards).

Dr. Mackles does cite Dr. Salinas-Garcia's order which required "24-hour-a-day skilled nursing observation, supervision and intervention." But presumably, that order was due to Minor Doe being admitted for "suicidal tendencies," to protect him from the potential of self-harm. Dr. Mackles does not assert that such an order was required, as an applicable standard of care, to protect Minor Doe from the acts of other patients. Further, he fails to describe what "24-hour-a-day skilled nursing observation, supervision, and intervention" should have meant in the context of Minor Doe's admission and why checking on him every fifteen minutes was not sufficient to meet that standard of care. *Cf. HMIH*, 2022 WL 627226, at *5. Finally, he sets forth no facts that would tend to show that Laurel Ridge should have been aware of the danger posed to Minor Doe by the specific roommate he was paired with.

As such, Dr. Mackles's opinion is simply that, because Laurel Ridge did not provide continuous monitoring of Minor Doe, it allowed a situation where he could be sexually abused by his roommate. Without more, Dr. Mackles's opinion is mere *ipse dixit*—a conclusory statement relying simply on the fact that an event occurred to deduce that the defendant is at fault. *See Ipse Dixit*, BLACK'S LAW DICTIONARY (12th ed. 2024), *available at* Westlaw ("Something asserted but not proved"). Simple *ipse dixit* in an expert report "is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was (or was not) met." *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001) (quoting *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex. App.—El Paso 1995, writ denied)). Instead, the expert should be able to offer an opinion on what an ordinarily prudent health care facility would do under the same or similar circumstances. *Id.* (citing *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366

(Tex. 1987)). The report must also "show that the expert is of the opinion []he can do so regarding both foreseeability and cause-in-fact." *Rice v McLaren*, 554 S.W.3d 195, 201 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (alteration in original) (*citing Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017)). "Because bare conclusions are not enough, a report must 'explain, factually, how proximate cause is going to be proven,' although it 'need not prove the entire case or account for every known fact.'" *Baptist St. Anthony's Hosp.*, 703 S.W.3d at 343 (quoting *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018)). Conclusions are not enough, "rather the expert must explain the basis of his statements to link his conclusions to the facts." *Bowie v. Memorial Hosp. v. Wright*, 79 S.W.3d 48, 51 (Tex. 2002).

Here, Dr. Mackles addresses only cause-in-fact. There is no indication that the 24-hour-a-day supervision order was put into place to protect Minor Doe from others rather than himself. And there is no indication in Dr. Mackles's report that Laurel Ridge should have been aware of the risk associated with the particular patient with whom Minor Doe was assigned to share a room. Without that, Dr. Salinas-Garcia's order is irrelevant, as it seems Dr. Mackles's opinion is simply that Laurel Ridge should maintain continuous monitoring of all patients at all times and is responsible for anything that happens to them if it does not do so. Yet, as set forth above, the report is silent as to how Dr. Mackles would be qualified to assign that level of care in this particular instance or what facts he would rely upon to do so.

As such, Dr. Mackles's report fails to set forth an applicable standard of care based on the facts of this case and based on the care that should be rendered by a behavioral health/psychiatric facility with regard to the admission and supervision of a patient. It further fails to establish how proximate cause is going to be proven—specifically foreseeability—between the actions of Laurel Ridge and the incident in question. *See Baptist St. Anthony's Hosp.*, 703 S.W.3d at 343. For these reasons, we hold the trial court abused its discretion in overruling the objections to the sufficiency

of Dr. Mackles's opinions. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

## DANIEL ARREDONDO, LPC, LSOTP

Next, Laurel Ridge asserts the two letters written by Daniel Arredondo, LPC, LSOTP— a counselor who treated Minor Doe after "the Laurel Ridge incident"—are not reports at all and wholly fail to meet the statutory obligations under Chapter 74. We agree. First, no curriculum vitae was ever produced for Arredondo, contrary to the requirement in Texas Civil Practice & Remedies Code section 74.351(a) (requiring claimant to serve expert report "with curriculum vitae"). Further, his letters do not meet the standard of Chapter 74. *See, e.g.*, *Mimari v. Johnson*, No. 04-06-00454-CV, 2006 WL 3206068, at *2 (Tex. App.—San Antonio Nov. 8, 2006, no pet.) (mem. op.) (letter written by plaintiff's attorney was not 'expert report' as defined by 74.351). His letters speak only of the condition of Minor Doe, post-incident and during counseling sessions, and do not offer a standard of care, a breach, or otherwise establish a causal link between the actions of Laurel Ridge and the incident in question. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 342–43 (Tex. 2024) (stating same, citing TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6)). It is not even clear that Doe presented Arredondo's letters with the intent that they be considered reports under Chapter 74. Given these points, we hold the trial court abused its discretion in overruling Laurel Ridge's objections to Arredondo's letters. *See Van Ness*, 461 S.W.3d at 142.[2]

---

[2] Doe argues Laurel Ridge "attempts to place the same degree of qualification on Mr. Arredondo that apply to a medical doctor" when "Mr. Arredondo is not a physician" but instead "counsels abuse victims like Minor Doe and provides treatment to them." She further argues "[i]t is doubtful that he is even required to comply with the rigid requirements of § 74.351 that apply to physicians." Since we hold Arredondo's letters are equivalent to "no report" because they do not attempt to address standard of care, breach, causation, or otherwise implicate the named defendant in anyway, we do not address whether Arredondo's qualifications meet, or need to meet, the qualifications of an expert as set forth in the TMLA. *See* TEX. R. APP. P. 47.1; TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5).

**REMEDY**

Under Texas Civil Practice & Remedies Code section 74.351(c), if the trial court finds a report deficient, "the [trial] court may grant one 30-day extension to the claimant in order to cure the deficiency.". *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011) ("The trial court should err on the side of granting the additional time and must grant it if the deficiencies are curable."). We should therefore only render, dismissing the underlying cause with prejudice, if it would be an abuse of discretion for the trial court to grant a one-time thirty-day extension and opportunity to cure. *Accord.* TEX. R. APP. P. 43.3 (requiring render unless remand necessary for further proceedings). But, if we find that no "expert report" was tendered pursuant to Chapter 74, then we are required to dismiss. TEX. CIV. PRAC. & REM. CODE § 74.351(b); *see also Badiga v. Lopez*, 274 S.W.3d 681 (Tex. 2009) (dismissal appropriate where there is no expert report).

Thus, the question before us is whether the reports tendered by Minor Doe are merely deficient or, because they do not represent a good faith attempt to satisfy the statutory requirements, they are equivalent to no report at all. That is the very question addressed by the Texas Supreme Court in *Scoresby* wherein the court considered "whether a document served on a defendant can be so lacking in substance that it does not qualify as an expert report" under Chapter 74. 346 S.W.3d at 555. The *Scoresby* Court established a minimal standard, calling for leniency in determining whether the claimant served an "expert report" albeit a deficient one: "[A] document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Id*. at 549.

Turning first to Counselor Arredondo's letters, there is no basis to conclude the counselor was offering an expert report, much less an "adequate" one representing a "good faith effort" to provide a fair summary of his "expert opinions" addressing "applicable standards of care, the

manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 342–43 (Tex. 2024) (alterations in original) (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6)); *E.D. by & through B.O. v. Texas Health Care, P.L.L.C.*, 644 S.W.3d 660, 662 (Tex. 2022) (same). It plainly fails to meet the minimum qualifications for an expert report under the statute because it does not contain an opinion of an individual with expertise that the claim has merit or otherwise implicate Laurel Ridge's relevant conduct. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012) (concluding if report did not meet standard, it is not an expert report under the statute, and trial court must dismiss claims if defendant has properly moved for dismissal). In other words, the counselor offered no report at all, and we see no basis to remand to the trial court for consideration of an extension to cure the "expert report." *See Ogletree*, 262 S.W.3d at 323 (Willet, J. concurring) (providing "[i]n my view, there exists a third, albeit rare, category: a document so utterly lacking that no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one"); *see also Laredo Texas Hosp. Co., L.P. v. Gonzalez*, 363 S.W.3d 255 (Tex. App.—San Antonio 2012, no pet.) (rendering judgment dismissing claim because report wholly failed to implicate any defendant).

But, as to Dr. Mackles's report, the inquiry is more nuanced. We have held that Dr. Mackles's report does not establish his qualifications to render an expert opinion in this matter and we have held his report is deficient in that it does not adequately set forth an applicable standard of care or address proximate cause. But, under *Scoresby*, it seems his *attempt* to do so is enough to warrant a remand to allow the trial court to, in its discretion, decide whether to grant an opportunity to cure. 346 S.W.3d at 549 ("An individual's lack of relevant qualifications and an

opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so.").

It is of note that the *Scoresby* court used the term "individual with expertise" rather than "expert" as defined by Chapter 74. *Id.*; *cf.* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) (defining an "expert report" as "a written report *by an expert*" (emphasis added)); *Westover Continuing Care Center, Ltd. Co. v. Adams*, 2021 WL 5605286, at *2–3 (Tex. App.—San Antonio Dec. 1, 2021, no pet.) (mem. op.) (quoting *Scoresby* for "individual with expertise" language). That choice, along with the Texas Supreme Court's ruling in *Ogletree v. Matthews*, make it clear the Court intended to provide an opportunity to cure even where the expert report is tendered by someone not qualified as an expert under Chapter 74. *See* 262 S.W.3d 316, 320–21 (Tex. 2007).[3] Sister courts of appeal have followed that construction of *Scoresby*. *See, e.g., Matagorda Nursing & Rehab. Ctr., LLC v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at *6 (Tex. App.—Corpus Christi-Edinburg Jan 12, 2017, no pet.) (mem. op.); *Henry v. Kelly*, 375 S.W.3d 531, 536 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). This court has, as well, supported that construction of *Scoresby*. *See Westover Continuing Care Center, Ltd. Co. v. Adams*, 2021 WL 5605286, at *3 (Tex. App.—San Antonio Dec. 1, 2021, no pet.) (mem. op.); *Seastrunk v. Meza*, 2011 WL 3502272, at *2 (Tex. App.—San Antonio Aug. 10, 2011, no pet.) (mem. op.).

We have previously applied *Scoresby* and remanded a case to the trial court to afford the claimant an opportunity to cure, if possible, after concluding an expert report was deficient where the trial court had previously found the report adequate. *See Thilo Burzlaff, M.D., P.A. v. Weber*, 582 S.W.3d 314, 329 (Tex. App.—San Antonio 2018, no pet.) (concluding expert report deficient

---

[3] Justice Willett, in his concurrence in *Ogletree*, noted that the majority's decision makes it clear that a plaintiff's "miscue, designating the wrong type of medical professionals to opine on standard of care, is the type of defect for which a trial court may grant a discretionary section 74.351(c) extension." *Id.* at 323.

because it did not contain fair summary of basis of opinion concerning statutory element of causation); *see also Mangin v. Wendt*, 480 S.W.3d 701, 710 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (remanding to give claimant opportunity to cure deficiency); *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (same); *see also* TEX. CIV. PRAC. & REM. CODE §74.351(c); *Scoresby*, 346 S.W.3d at 554 ("It must be remembered that there are constitutional limitations upon the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause, and those limitations constrain the Legislature no less in requiring dismissal." (quoting *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991)) (cleaned up)).[4]

While we have found fault with the standard of care as presented by Dr. Mackles, "[a]t this preliminary stage of the litigation, whether the expert's explanations are 'believable' is not relevant" to whether the report constitutes a good-faith effort to comply with the Act. *Id.*; *see, e.g.*, *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 517 (Tex. 2017) ("We remain mindful that an 'adequate' expert report 'does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.'" (quoting *Scoresby*)). Because

---

[4] Notwithstanding the foregoing, we are concerned about a potentially overbroad reading of *Scoresby*. Although the *Scoresby* Court referenced many times that an extension should be given "if the deficiencies can be cured," its minimal standard leaves almost nothing that cannot be cured. Certainly, there is a boundary, as explained by Justice Willett in his concurrence to *Ogletree*: "It is indisputable, for example, that a 'report' signed by a plumber is no report at all and merits swift dismissal, no matter how brilliantly he describes how the defendant's departure from accepted standards of care caused the patient's injury." *See Ogletree,* 262 S.W.3d at 324 (Willett, J., concurring). But, while the *Scoresby* court made reference to "fine distinctions" in areas of expertise, it is unclear where the line should be drawn outside of Justice Willett's far-fetched example. *Scoresby*, 346 S.W.3d at 557 (providing court did not "think a claimant's opportunity to cure . . . should turn on such fine distinctions"). Justice Johnson, dissenting in *Scoresby*, took the position that "[t]he Legislature did not intend that an expert report could be by a doctor with no demonstrated or inferable experience and training in a practice area who reads medical records and writes a report containing [] simplistic indictments" that are no more than res ipsa loquitur." *Id.* at 564. But, while that is exactly the situation at hand, his opinion was not accepted by his brethren and is not controlling here. Thus, we are left with a standard so lenient that it allows a trial court to usurp the role of the expert, making a determination that there is *some* potential merit that *some* expert could espouse if given the chance, rather than requiring an actual "expert" as defined by the legislature to do so within the statutory deadline. After all, any deficiency can be cured when given an opportunity to start anew with a different expert even years after the lawsuit was filed, with specific guidance now provided by a court as to the deficiency. Even so, and despite our misgivings about the application of *Scoresby* to the facts of this case, we find no way to distinguish it or the many cases following it and are therefore bound.

Dr. Mackles has relevant experience, while not meeting the statutory standard, and because Dr. Mackles at least attempted to address the standard of care, breach and causation in a manner that implicates Laurel Ridge, his report—while deficient—meets the minimal *Scoresby* standard. We are therefore bound by that decision to remand versus render.

## CONCLUSION

In accordance with this court's opinion of this date, we reverse the trial court's September 23, 2024 order overruling appellant Laurel Ridge's objections to Doe's Chapter 74 expert reports and qualifications and remand the case to the trial court to consider whether to afford Doe a thirty-day extension to cure the deficiencies in Dr. Mackles's expert report.

Lori Massey Brissette, Justice